**SHIELDALLOY METALLURGICAL CORP., Plaintiff,**

v.

**UNITED STATES, Defendant,**

v.

**GALT ALLOYS INC., Defendant–Intervenor.**

**Slip Op. 97–116.**
**Court No. 95–08–01034.**

United States Court of International Trade.

Aug. 20, 1997.

Harris & Ellsworth (Cheryl Ellsworth, Jennifer de Laurentiis), Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Washington, DC, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Lydia K. Griggsby, Baltimore, MD); Of Counsel, David W. Richardson, Attorney–Advisor, Office of Chief Counsel for Import Administration, Department of Commerce, for Defendant.

Ross & Hardies (Jeffrey S. Neeley),Washington, DC, for Defendant–Intervenor.

## OPINION

POGUE, Judge.

On November 19, 1996, this Court remanded certain aspects of the International Trade Administration's final determination in *Ferrovanadium and Nitrided Vanadium from the Russian Federation*, 60 Fed.Reg. 27,957 (Dep't Commerce 1995)(final determ.). The remand Order directed Commerce to "correct misleading language ... regarding calculation of the surrogate price of vanadium slag; and to explain its use of Tulachermet's factors of production data to calculate foreign market value for Odermet, and its use of Galt as exporter-respondent." *Shieldalloy Metallurgical Corp. v. United States*, 947 F.Supp. 525, 539 (CIT 1996). Familiarity with the Court's earlier decision in this case is presumed. This matter is now before the Court following Commerce's remand determination.

### DISCUSSION

1. Valuation of Vanadium Slag

In its decision ordering the remand, this Court upheld Commerce's methodology for determining the value of vanadium slag, a raw material for vanadium pentoxide. *Id.* at 532. The Court concluded that Commerce's methodology was in accordance with law and that its application was based on substantial evidence on the record. *Id.*

The Court remanded this issue solely to give Commerce the opportunity to correct misleading language in the Final Determination which suggested that Commerce used prices for products of Russian origin in calculating foreign market value. The Court explained that this language was significant because for purposes of the investigation Commerce treated Russia as a non-market economy ("NME") country and "because the statute specifies that in cases where the merchandise under investigation is exported from a NME, foreign market value" is to be based on values of factors of production in a market economy country or countries. *Id.*

On remand, Commerce corrected the misleading language to say, "[T]he 90% prices *correspond* to the levels reported for the Russian products." Remand Determ. at 2. The corrected language is consistent with the language used in Commerce's valuation memorandum, in which the Department explained its method for valuing vanadium slag, *inter alia.* (Pub. Doc. 277 at 2–3).

■ Plaintiff objects to Commerce's remand determination, arguing that Commerce should have re-opened the record to obtain further information on the prices reported in the original record. However, Shieldalloy has failed to provide the Court with any evidence to suggest that the prices in ques-

tion were of Russian origin. Commerce's mistake in the Final Determination can not be considered evidence and the corrected language properly reflects the evidence contained in the administrative record. *See* Final Valuation Memo. (Pub.Doc. 277) at 3 ("[T]he vanadium section in *South Africa's Industry 1993/94* (Industry Report) . . . shows that the . . . 90% prices [listed in the *Metal Bulletin* ] *correspond* to the levels reported for the Russian products.") (emphasis added). Accordingly, this aspect of the remand determination is sustained.

### 2. Use of Tulachermet's Factors of Production Values

In its remand determination, Commerce provided reasons for applying Tulachermet's verified factors of production data to determine foreign market value for Odermet's margin calculation and set forth the evidence supporting its decision. *See* Remand Determ. at 3–5.

Commerce explained that Odermet is a third country exporter of the subject merchandise. The statute directs Commerce to calculate foreign market value for merchandise from a nonmarket economy using "the value of the factors of production utilized in producing the merchandise." 19 U.S.C. § 1677b(c)(1)(1988). Commerce verified that the subject merchandise exported to the U.S. by Odermet was produced by Tulachermet. Commerce also verified Tulachermet's factors of production data.

Plaintiff objects to Commerce's determination, arguing that Commerce should have based its foreign market value determination on information provided in plaintiff's petition or on verified information from Chusovoy, a different producer, because Tulachermet's questionnaire response was deficient.

■ Commerce responds and the administrative record demonstrates that the deficiencies in Tulachermet's questionnaire related to U.S. sales and not to the factors of produc-

tion data which Commerce had verified. *See* Memo. re: Verification of the Questionnaire Response of SC Vanadium–Tulachermet, April 6, 1995 (Pub.Doc. 255). Moreover, Commerce could not resort to adverse best information available because Odermet complied with all information requests. *See Olympic Adhesives v. United States*, 8 Fed. Cir. (T) 69, 899 F.2d 1565, 1574 (1990) ("[The statute] clearly requires *noncompliance with an information request* before resort to the best information rule is justified, whether due to refusal or mere inability.") In the Remand Determination Commerce identifies evidence showing that Odermet responded to all requests for information, and that all of Odermet's responses were verified. *See* Remand Determ. at 4–5. Accordingly, Commerce's determination is sustained.

### 3. The use of Galt as exporter-respondent.

■ In its decision ordering remand, this Court concluded that substantial evidence on the record supported Commerce's conclusion that Galt was related to its joint venture with the Dutch company Hascor BV. The statute contains several provisions directing Commerce to ignore transactions between related parties. For example, 19 U.S.C. § 1677a (1988) requires Commerce to use different data to determine United States price depending on whether the exporter and the United States purchaser are related or unrelated.[1] Commerce must also disregard transactions between the foreign producer and its related suppliers when foreign market value is based on constructed value. *See* 19 U.S.C. § 1677b(e)(2) and (3) (1988). As Commerce explained in the remand determination, the reason Commerce ignores certain related party transactions "is that Congress did not want to put an exporter in the position of being able to manipulate the dumping calculations. . . . Such manipulation could occur through transfer pricing between related parties. One party could sell the subject merchandise at a high price to a related

---

1. Specifically, if the exporter and United States purchaser are not related, Commerce is to use "purchase price," the "price at which merchandise is purchased, or agreed to be purchased, . . . from a reseller or the manufacturer or producer of the merchandise for exportation to the United States." If the exporter and United States purchaser are related, Commerce is to use "exporters sales price," the "price at which merchandise is sold or agreed to be sold in the United States" to the first unrelated purchaser. *See* 19 U.S.C. § 1677a(b) and (c).

**364**

party, who then in turn could sell it to an unrelated purchaser for exportation to the United States at a low price." Thus Commerce's decision here to rely on sales to the first unrelated party in determining United States price was a reasonable application of the statute.

As Galt was the first party to sell to an unaffiliated purchaser, Commerce used Galt's sales as the basis for determining United States price.

■ However, because language in Commerce's Final Determination implied reliance on the "knowledge" test[2] in determining the proper exporter-respondent the Court ordered Commerce to explain on remand its decision to treat Galt as the proper exporter-respondent for purposes of calculating United States price.

On remand, Commerce explained that Galt's verified questionnaire response established that Galt was the company that set prices, quantities and delivery terms to the first unrelated customer in the United States. Thus substantial evidence supports Commerce's decision to treat Galt as the proper exporter-respondent for purposes of its investigation.

Plaintiff objects to the remand determination because its interpretation of Galt's questionnaire response and the verification report differs from that of Commerce. (Pl. Shieldalloy Metallurgical Corp.'s Comm. Com-

merce Dep't.'s Remand Determ. at pp. 18–20).

■ It is not the Court's role, however, to re-weigh the evidence; rather the Court insures that Commerce's determinations are supported by substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i)(1988). Commerce's verification of Galt's sales data provides such evidence.

Accordingly, the remand results are sustained.

## JUDGMENT

The Department of Commerce, International Trade Administration ("Commerce"), having submitted its *Remand Determination: Shieldalloy Metallurgical Corporation v. United States,* 947 F.Supp. 525 (1996), and the Court having examined all comments filed regarding Commerce's Remand Determination, and all other papers and proceedings had herein, it is hereby

**Ordered** that the Remand Determination is affirmed in all respects.

---

**2.** This test is used to determine foreign market value for importation from an intermediate country, 19 U.S.C. § 1677b(f) (1988). Knowledge may also be an issue when Commerce is deciding whether to use the price charged by the producer to the middleman, or the middleman to the United States purchaser as purchase price. According to the legislative history of the Trade Agreements Act of 1979, "If a producer knew that the

merchandise was intended for sale to an *unrelated purchaser* in the United States under terms of sale fixed on or before the date of importation, the producer's sale price to an *unrelated middleman* will be used as the purchase price." S.Rep. No. 96–249 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381 (emphasis added). Because of the relationship between Galt and Galt/Hascor the knowledge test was not relevant here.