**Slip Op. 00-45**
# UNITED STATES COURT OF INTERNATIONAL TRADE

MITSUBISHI HEAVY INDUSTRIES, LTD.,

and

TOKYO KIKAI SEISAKUSHO, LTD.,

        Plaintiffs,

        v.

UNITED STATES,

        Defendant,

        and

GOSS GRAPHICS, INC.,

        Defendant-Intervenor.

BEFORE: Pogue, Judge

Consol. Court No. 96-10-02292

(Japan)

[Commerce's second remand determination is affirmed.]

Decided: April 26, 2000

Steptoe & Johnson LLP (Anthony J. LaRocca, Richard O. Cunningham, Eric C. Emerson, Gregory S. McCue) for Plaintiff Mitsubishi Heavy Industries, Ltd.; Perkins Coie LLP (Yoshihiro Saito, Mark T. Wadsen), for Plaintiff Tokyo Kikai Seisakusho, Ltd.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, James H. Holl III, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Robert J. Heilferty, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendants.

Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, John R. Shane, Timothy C. Brightbill) for Defendant-Intervenor.

**OPINION**

**Pogue, Judge:** Presently before the Court is the U.S. Department of Commerce's ("Commerce") second remand determination ("Second Remand Determ.") of its antidumping investigation of large newspaper printing presses ("LNPPs") from Japan. The matter first arose when Plaintiffs Mitsubishi Heavy Industries, Ltd. ("MHI") and Tokyo Kikai Seisakusho, Ltd. ("TKS"), respondents in the underlying investigation, and Defendant-Intervenor Goss Graphic Systems, Inc. ("Goss"), petitioner in the underlying investigation, filed separate motions challenging various aspects of Commerce's determination in Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, From Japan, 61 Fed. Reg. 38,139 (Dep't Commerce, July 23, 1996)(final determ.)("Japan Final"), amended by, 61 Fed. Reg. 46,621 (Dep't Commerce, Sept. 4, 1996)(antidumping duty order and amend. to final determ.).[1] The motions were consolidated.

On June 23, 1998, this Court remanded certain aspects of Commerce's determination in Japan Final. See Mitsubishi Heavy

---

[1]The antidumping investigation of LNPPs from Japan was conducted simultaneously with Commerce's investigation of imports of LNPPs from Germany. Issues common to both investigations were discussed in Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, From Germany, 61 Fed. Reg. 38,166 (Dep't Commerce, July 23, 1996)(final determ.).

Indus., Ltd. v. United States, 22 CIT ____, 15 F. Supp. 2d 807

(1998)("Mitsubishi I").  On December 21, 1998, Commerce issued its

first remand determination ("First Remand Determ.").    Because

Commerce did not adequately explain its foreign like product

determination on remand, the Court again remanded this issue to

Commerce for further explanation or reconsideration.    See

Mitsubishi Heavy Indus., Ltd. v. United States, 23 CIT ___, ___, 54

F. Supp. 2d 1183, 1197-98 (1999)("Mitsubishi II").  Commerce issued

its second remand determination on August 23, 1999.

**Standard of Review**

The Court will uphold a Commerce determination in an

antidumping investigation unless it is "unsupported by substantial

evidence on the record, or otherwise not in accordance with law[.]"

Section 516A(b)(1)(B)(i) of the Tariff Act of 1930, as amended, 19

U.S.C. § 1516a(b)(1)(B)(i)(1994).

**Discussion**

In making the dumping determination at issue here, Commerce

based normal value on constructed value.[2]  See Japan Final at

---

[2]Commerce calculates an antidumping duty by comparing the
imported product's price in the United States to its "normal

38,146.  Profit is a component of constructed value.  See 19 U.S.C.

§1677b(e)(2). The statute prescribes four different methods for

calculating constructed value profit.  See id.  In Mitsubishi I,

"Commerce relied on 19 U.S.C. § 1677b(e)(2)(A), which states that

[constructed value] profit is to be based upon 'the actual amounts

_____

value."  The dumping margin is the amount by which the normal
value exceeds the U.S. price.  See 19 U.S.C. § 1673(1994).
    Normal value is either the price of the merchandise in the
producer's home market or its export price to countries other
than the United States.  See 19 U.S.C. § 1677b(a)(1)(1994).
Where Commerce cannot compute the home-market price, Commerce may
base normal value on constructed value, see 19 U.S.C. §
1677b(a)(4), which is calculated pursuant to § 1677b(e).
    In addition, the statute provides that "Commerce may
determine that home[-]market sales are inappropriate as a basis
for determining normal value if the particular market situation
would not permit a proper comparison" with the U.S. sales price.
Statement of Administrative Action, H.R. Doc. No. 103-316, 103[rd]
Cong., 2[nd] Sess. (1994), reprinted in Uruguay Round Agreements
Act, Legislative History, Vol. VI, at 822 ("SAA")(citing 19
U.S.C. § 1677b(a)(1)(C)(iii)).  The statute does not define
"particular market situation."  See 19 U.S.C. §
1677b(a)(1)(C)(iii).
    Here, Commerce determined that, although home-market sales
of LNPPs were "viable" (i.e., sufficient in volume), the home-
market sales prices would not allow a proper comparison with U.S.
sales prices because of the "particular market situation."  See
Japan Final 38,146-147.  Commerce determined that the particular
market situation here was characterized by "(1) a unique demand
pattern prevalent in each national market; (2) unique technical
specification required for each highly customized LNPP sold; and
(3) very low volume of individual LNPP sales in the normal
business cycle."  Second Remand Determ. at 4 (citing Normal Value
Mem. (Conf. Doc. 73)(Nov. 9, 1995) at 3).  Therefore, Commerce
based normal value on constructed value.  Commerce's decision to
rely on constructed value was not challenged.

incurred and realized by the specific exporter or producer . . . in connection with the production and sale of a <u>foreign like product</u> . . . .'"  22 CIT at \_\_\_\_, 15 F. Supp. 2d at 828 (quoting 1677b(e)(2)(A))(emphasis added).[3]

TKS argued that Commerce should not have relied on §

---

[3]The statute defines "foreign like product" as,

[M]erchandise in the first of the following categories in respect of which a determination . . . can be satisfactorily made:

(A) The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise--

(i) produced in the same country and by the same person as the subject merchandise,
(ii) like that merchandise in component material or materials and in the purposes for which used, and
(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise--B

(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,
(ii) like that merchandise in the purposes for which used, and
(iii) which the administering authority determines may reasonably be compared with that merchandise.

19 U.S.C. § 1677(16)(1994).

1677b(e)(2)(A) because the findings that led Commerce to rely on constructed value rather than home-market prices in calculating normal value constituted evidence that no foreign like product existed in the home market. See Mitsubishi I, 22 CIT at ___, 15 F. Supp. 2d at 828-29. Because Commerce did not explain which of the three statutory foreign like product definitions it relied upon in classifying LNPPs sold in the home market as foreign like product, the Court remanded this issue for Commerce's reconsideration. See id. at ___, 15 F. Supp. 2d at 829.

In its first remand determination, Commerce explained that it had relied upon the definition of foreign like product at § 1677(16)(C). See First Remand Determ. at 17. Commerce did not, however, explain the factual basis for its determination that the LNPPs sold in Japan and the United States could "reasonably be compared" under 19 U.S.C. § 1677(16)(C)(iii). See Mitsubishi II, 23 CIT at ___, 54 F. Supp. 2d at 1197.

Instead, Commerce referred to its twenty percent "difmer" guideline.[4] Under the difmer guideline, where the difmer

_____

[4]The antidumping statute provides for an adjustment to normal value for differences in physical characteristics between the foreign like product and the merchandise exported to the United States. See 19 U.S.C. § 1677b(a)(6)(C)(ii). Thus, where the foreign like product is not identical to the subject merchandise, Commerce adjusts normal value for the "difference in

---

cost attributable to the difference in physical characteristics"--the difference in merchandise ("difmer") adjustment.  See Import Policy Bulletin 92.2 (July 29, 1992)("Policy Bulletin 92.2").

To determine whether there is a reasonable basis for comparing non-identical merchandise, Commerce applies the twenty percent difmer guideline.  Commerce's 1992 policy bulletin explains:

> To limit the potential differences in commercial value caused by physical differences, we employ the 20% guideline.  If the commercial value of two products is greatly different, then a comparison is not reasonable; the difmer adjustment, being limited to variable manufacturing costs probably cannot fully compensate. . . . When the variable cost difference exceeds 20%, we consider that the probable differences in values of the items to be compared is so large that they cannot reasonably be compared.  Since the merchandise is not identical, does not have approximately equal commercial value, and has such large differences in commercial value that it cannot reasonably be compared, the merchandise cannot be considered similar under [§ 1677(16)(A), (B), or (C)] of the statute.
>
> . . . .
>
> There may be instances in which comparisons may be reasonable even if the diffmer [sic] is in excess of 20% of the cost of manufacture of the U.S. model.
>
> . . . .
>
> The 20% guideline is, however[,] a point of departure in the analysis, and cannot be ignored.  Any use of comparisons with greater than 20% diffmers [sic] must be explained. . . . Unless we can explain how the comparison remains reasonable, or distortion is minimized, we should not make comparisons when diffmers [sic] exceed 20%.  Instead, when there is no other similar merchandise, we should revert to constructed value[.]

adjustment to normal value exceeds twenty percent, Commerce does

not make a finding that the home-market product is reasonably

comparable to the exported good, unless it can explain how the

comparison is nevertheless reasonable.  See Policy Bulletin 92.2;

see also Ad Hoc Comm. v. United States, 19 CIT 1398, 1401, 914 F.

Supp. 535, 540 (1995); NTN Bearing Corp. v. United States, 19 CIT

1221, 1238-39, 905 F. Supp. 1083, 1097-98 (1995); Koyo Seiko Co.,

Ltd. v. United States, 19 CIT 1085, 1091-92, 898 F. Supp. 915, 921-

22 (1995), aff'd in part, rev'd in part, 92 F.3d 1162 (Fed. Cir.

1996); Certain Stainless Steel Cooking Ware From the Republic of

Korea, 58 Fed. Reg. 9,560, 9,561 (Dep't Commerce, Feb. 22,

1993)(final results admin. review)("the Department normally does

not consider merchandise to be reasonably comparable if the difmer

---

Policy Bulletin 92.2 (emphasis added).  Thus, where Commerce
cannot explain how the comparison remains reasonable, Commerce
bases normal value on constructed value, rather than on the home-
market price.  See id.
     Commerce has consistently applied the twenty percent difmer
guideline as prescribed by its 1992 policy bulletin.  See, e.g.,
Mechanical Transfer Presses From Japan, 65 Fed. Reg. 11,764,
11,765 (Dep't Commerce, Mar. 6, 2000)(prelim. results admin.
review); Certain Pasta From Italy, 64 Fed. Reg. 6,615, 6,626
(Dep't Commerce, Feb. 10, 1999)(final results admin.
review)("Although the 20 percent difmer test is not mandated by
the statute, the Department has used it continuously for a long
period of time and in 1992 established a clear policy on its
use.")(citing Policy Bulletin 92.2); Certain Welded Carbon Steel
Pipe and Tube From Turkey, 61 Fed. Reg. 69,067, 69,076 (Dep't
Commerce, Dec. 31, 1996)(final results admin. review).

adjustment is greater than 20 percent of the cost of manufacturing
the product sold in the United States"); <u>Antifriction Bearings
(Other Than Tapered Roller Bearings) and Parts Thereof From France</u>,
57 Fed. Reg. 28,360, 28,367 (Dep't Commerce, June 24, 1992)(final
results admin. review).

Based on language used by Commerce in its first remand
determination, original final determination, and normal value
memorandum, it appeared to the Court that Commerce had found that
the difmer adjustment exceeded the twenty percent guideline. <u>See</u>
<u>Mitsubishi II</u>, 23 CIT at \_\_\_, 54 F. Supp. 2d at 1196-97 (citing
First Remand Determ. at 15; <u>Japan Final</u> at 38,146; and Normal Value
Mem. (Conf. Doc. 73)(Nov. 9, 1995) at 16-17). In maintaining on
remand that its foreign like product determination was based on 19
U.S.C. § 1677(16)(C), however, Commerce did not explain the factual
basis for its decision that the Japanese and U.S. LNPPs were
nevertheless reasonably comparable. <u>See</u> <u>id.</u> at \_\_\_, 54 F. Supp. 2d
at 1197.[5] Therefore, remanding for a second time, the Court

_____

[5]In its first remand, Commerce cited various record
documents as support for its foreign like product determination,
but none indicated that the home-market and U.S. LNPPs were
reasonably comparable in terms of their physical characteristics.
<u>See</u> <u>Mitsubishi II</u> at \_\_\_, 54 F. Supp. 2d at 1197. Instead, each
document merely referred to a putative foreign like product,
without discussing the factual support for the decision. <u>See</u> <u>id.</u>

ordered Commerce to either explain how the merchandise could still "reasonably be compared" under 19 U.S.C. § 1677(16)(C)(iii) or find that no foreign like product exists.  See Mitsubishi II, 23 CIT at __, 54 F. Supp. 2d at 1197-98.

Now, in its second remand determination, Commerce clarifies that it did not in fact conduct a difmer analysis, "notwithstanding the agency's determination that price-to-price [(i.e., normal value to U.S. price)] comparisons between sales of Japanese and U.S. LNPP were not appropriate."  Second Remand Determ. at 1.  Instead, Commerce determined that it would "not be practicable" to apply the difmer adjustment to normal value.  Id. at 4 (citing Normal Value Mem. (Conf. Doc. 73)(Nov. 9, 1995) at 16-17).[6]  Commerce explains that its "reference to its 'difmer' practice [in the first remand determination] was by way of background and was not intended to suggest that [Commerce] made a determination in this case that the difmer adjustment would exceed the 20 percent guideline."  Id.  Because Commerce did not in fact find that the difmer adjustment

_____

[6]In its normal value memorandum, Commerce concluded: "The sheer extent of the physical differences demonstrate that the [petitioner's] proposed matches are between products separated by complex physical differences so numerous that [Commerce's] normal reliance on [difmer] adjustments would become an analytical exercise equivalent to the use of constructed value."  Normal Value Mem. (Conf. Doc. 73)(Nov. 9, 1995) at 16-17.

exceeded twenty percent, Commerce did not make a presumptive finding that the Japanese and U.S. LNPPs were not reasonably comparable.

In addition, Commerce posits in its second remand determination that the "reasonably comparable" prong of the foreign like product definition, 19 U.S.C. § 1677(16)(C)(iii), must be interpreted within the context of the statutory provision to which it is being applied. See id. at 5. In other words, Commerce suggests that a finding that the difmer adjustment to normal value would exceed twenty percent for particular merchandise does not mean that that merchandise is presumptively not reasonably comparable for the purposes of other sections of the antidumping statute requiring a "foreign like product" (such as, viability under 19 U.S.C. § 1677b(a)(1)(C) and the calculation of constructed value profit under 19 U.S.C. § 1677b(e)(2)(A)).

The Court recognizes that Congress delegated to Commerce the authority to determine whether merchandise may reasonably be compared pursuant to 19 U.S.C. § 1677(16)(C)(iii). Moreover, we recognize that Commerce's practice is to apply the twenty percent difmer guideline solely to determine whether price-to-price comparisons are feasible. See Policy Bulletin 92.2.

Nevertheless, the Court declines to decide whether it is

permissible to interpret the language "may reasonably be compared" differently depending on which specific provision of the antidumping statute is implicated.  First, it seems unnecessary because in this case Commerce did not in fact find that the difmer adjustment would exceed twenty percent.  Second, Commerce's twenty percent difmer guideline is flexible, allowing Commerce to find that merchandise is reasonably comparable even where the difmer adjustment exceeds twenty percent.  <u>See</u> Policy Bulletin 92.2. Finally, to so hold could lead to the awkward result of allowing Commerce to determine that a "foreign like product" exists for the purposes of one part of the antidumping statute but not for another within the same investigation.  "The Court presumes that the same words used twice in the same act have the same meaning."  <u>Floral Trade Council v. United States</u>, 23 CIT ___, ___, 41 F. Supp. 2d 319, 331 (1999)(citing <u>ICC Indus., Inc. v. United States</u>, 812 F.2d 694, 700 (Fed. Cir. 1987)).

The larger point is simply that, when, as here, Commerce's foreign like product determination under 19 U.S.C. § 1677(16)(C) is at issue, Commerce must explain the basis for its finding that the home-market and U.S. product may reasonably be compared.[7]

---

[7]Moreover, the Court does not here reach the question of whether the language "may reasonably be compared" under 19 U.S.C.

In its second remand determination, Commerce now explains the factual basis for its foreign like product determination. According to Commerce,

> TKS's home[-]market LNPP may reasonably be compared to its sales of LNPP in the United States based on evidence that LNPP in both markets share detailed product characteristics, even if the custom-made combination of precise specifications [made] price-to-price comparisons [(i.e., the use of the home[-]market price as the basis for normal value)] impracticable.

Id. at 2. Commerce further explains,

> [E]vidence submitted throughout the course of the underlying proceeding by both TKS and MHI supports [Commerce's] position. In its questionnaire, [Commerce] requested that both respondents identify LNPP sold in both Japan and the United States using the same detailed set of press characteristics. . . . In their responses, both MHI and TKS indicated that the LNPP sold in Japan and the LNPP sold in the United States share[d] the detailed press characteristics that [Commerce] set out in its questionnaire.

Id. at 11 (citing Aug. 28, 1995, Commerce Questionnaire (Pub. Rec. 72) Sec. A at A-4 to A-6; MHI Oct. 17, 1995, Resp. (Pub. Rec. 176) Sec. A at 11-12; TKS Oct. 17, 1995, Resp. (Conf. Rec. 38) Sec. A at A-3 to A-5; TKS Sept. 28, 1995, Resp. (Pub. Rec. 119), Sec. A at A-

---

§ 1677(16)(C)(iii) must be interpreted consistently with "permit a proper comparison" under 19 U.S.C. § 1677b(a)(1)(C)(iii). The foreign like product definition at § 1677(16) appears focused on the reasonableness of comparing goods, while the particular market situation provision at § 1677b(a)(1)(C)(iii) appears focused on the reasonableness of comparing prices. See SAA at 822.

24).

MHI argues that the record evidence cited by Commerce actually disproves a finding of reasonable comparability because the parties' questionnaire responses indicate that the Japanese and U.S. LNPPs exhibited "significant differences in over <u>half</u> of the categories" of enumerated press characteristics.  MHI Resp. to Second Remand Determ. at 5.  That MHI "can hypothesize a reasonable basis for a contrary determination[, however,] is neither surprising nor persuasive." <u>Matsushita Elec. Indus. Co. v. United States</u>, 3 Fed. Cir. (T) 44, 54, 750 F.2d 927, 936 (1984).  The possibility of drawing two inconsistent conclusions does not prevent Commerce's finding from being supported by substantial evidence.  <u>See</u> <u>Consolo v. Federal Maritime Comm'n</u>, 383 U.S. 607, 620 (1966)(citations omitted); <u>see also</u> <u>Shieldalloy Metallurgical Corp. v. United States</u>, 21 CIT 929, 932, 975 F. Supp. 361, 364 (1997)("It is not the Court's role . . . to re-weigh the evidence; rather the Court insures that Commerce's determinations are supported by substantial evidence.").

The plain language of the statutory foreign like product definition vests Commerce with considerable discretion in determining whether home-market and U.S. merchandise "may reasonably be compared." 19 U.S.C. § 1677(16)(C)(iii)(stating that

Commerce determines whether merchandise "may reasonably be compared"). Moreover, a reasonable person could conclude, as did Commerce, that the Japanese LNPPs were reasonably comparable with the LNPPs sold in the United States based on the finding that they shared numerous detailed press characteristics.[8] Therefore, Commerce's determination that the LNPPS sold in Japan and the United States could reasonably be compared is supported by substantial evidence.[9] Accordingly, Commerce properly calculated

---

[8]In addition, Commerce explained that the fact that the home-market and U.S. LNPPs shared a common use (i.e., the printing of newspapers) supported its determination that the merchandise was reasonably comparable under 19 U.S.C. § 1677(16)(C)(iii). See Second Remand Determ. at 11. It is a canon of statutory construction that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous[.]" Norman J. Singer, Sutherland Statutory Construction § 46.06 at 119 (5th ed. 1992). Basing the reasonable comparability finding on common use appears contrary to the plain language of the statute, as common use is already required under § 1677(16)(C)(ii). But see U.H.F.C. Co. v. United States, 916 F.2d 689, 697 (Fed. Cir. 1990)(holding that "substantial evidence support[ed] the conclusion that home[-] market glues regardless of grade 'may reasonably be compared' based on their many 'common uses.'"). Nevertheless, we need not decide this issue because Commerce's finding of shared press characteristics adequately supports its reasonable comparability finding under § 1677(C)(iii).

[9]TKS argues that Commerce's remand explanation of its reasonable comparability argument cannot be sustained because it is a post hoc rationalization. See TKS Cmts. on Second Remand Determ. at 5-6. TKS assumes that, because, in its second remand determination, Commerce articulates its shared-press-characteristics reasoning for the first time in these proceedings, its explanation is a post hoc rationalization.

constructed value profit based on sales of a foreign like product pursuant to 19 U.S.C. § 1677b(e)(2)(A).

### Conclusion

Because Commerce's foreign like product determination under 19 U.S.C. § 1677(16)(C) is supported by substantial evidence, the Court sustains Commerce's second remand determination.  Judgment will be entered accordingly.

                                          _____
                                            Donald C. Pogue
                                                 Judge

Dated:      April 26, 2000
            New York, New York

---

TKS misconstrues the law.  Under the correct recitation of the post-hoc rationalization rule, "[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action.  . . . It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Motor Vehicle Mfrs. Ass'n. v. State Farm, 463 U.S. 29, 50 (1983).  Here, Commerce itself articulated its reasoning for its reasonable comparability finding in its second remand determination.  Therefore, Commerce's explanation is not a post hoc rationalization.