**Slip Op. 00-97**

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr>
<td>

MITSUBISHI HEAVY INDUSTRIES, LTD.,

and

TOKYO KIKAI SEISAKUSHO, LTD.,

        Plaintiffs,

        v.

UNITED STATES,

        Defendant,

and

GOSS GRAPHICS, INC.,

        Defendant-Intervenor.

</td>
<td>

BEFORE: Pogue, Judge

Consol. Court No. 96-10-02292

(Japan)

</td>
</tr>
</table>

[Plaintiff's motion for reconsideration denied.]

                        Decided: August 8, 2000

Steptoe & Johnson LLP (Anthony J. LaRocca, Richard O. Cunningham, Eric C. Emerson, Gregory S. McCue) for Plaintiff Mitsubishi Heavy Industries, Ltd.; Perkins Coie LLP (Yoshihiro Saito, Mark T. Wadsen), for Plaintiff Tokyo Kikai Seisakusho, Ltd.

David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, James H. Holl III, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Robert J. Heilferty, Senior Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Wiley, Rein & Fielding (Charles Owen Verrill, Jr., Alan H. Price, John R. Shane, Timothy C. Brightbill) for Defendant-Intervenor.

**MEMORANDUM OPINION AND ORDER**

**Pogue, Judge:** Pursuant to USCIT Rule 59, plaintiff Tokyo Kikai Seisakusho, Ltd. ("TKS") moves this Court to reconsider its decision in Mitsubishi Heavy Industries, Ltd. v. United States, 24 CIT ___, 97 F. Supp. 2d 1203 (2000)("Mitsubishi III"), affirming the U.S. Department of Commerce's ("Commerce") second remand determination in connection with its antidumping duty determination in Large Newspaper Printing Presses and Components Thereof, Whether Assembled or Unassembled, From Japan, 61 Fed. Reg. 38,139 (Dep't Commerce, July 23, 1996)(final determ.)("Japan Final"), amended by, 61 Fed. Reg. 46,621 (Dep't Commerce, Sept. 4, 1996)(antidumping duty order and amend. to final determ.).

On June 23, 1998, this Court remanded certain aspects of Commerce's determination in Japan Final, including the issue TKS here asks us to reconsider: Commerce's "foreign like product" determination under 19 U.S.C. § 1677(16). See Mitsubishi Heavy Indus., Ltd. v. United States, 22 CIT ___, 15 F. Supp. 2d 807 (1998)("Mitsubishi I"). Because Commerce again did not adequately explain the basis of its foreign like product determination on remand, we remanded the issue a second time to Commerce for further explanation or reconsideration. See Mitsubishi Heavy Indus., Ltd.

v. United States, 23 CIT ___, ___, 54 F. Supp. 2d 1183, 1197-98 (1999)("Mitsubishi II").  Finally, after reviewing Commerce's explanation of its foreign like product determination in its second remand determination, we affirmed the determination as supported by substantial evidence.  See Mitsubishi III, 24 CIT at ___, 97 F. Supp. 2d at 1209.

Now, however, TKS asks this Court to reconsider its decision in Mitsubishi III.  TKS argues that this Court has "misapprehended [Commerce's] position regarding the basis for its 'foreign like product' finding[,]" TKS's Mot. to Alter or Reconsider J. at 6, and, in doing so, has improperly substituted its own judgment in place of Commerce's, see id. at 13.

### Motions for Reconsideration

The grant or denial of a motion for reconsideration under USCIT Rule 59(a) lies within the sound discretion of the court. See Asociacion Colombiana de Exportadores de Flores v. United States, 22 CIT ___, ___, 19 F. Supp. 2d 1116, 1118 (1998)(citing St. Paul Fire & Marine Ins. Co. v. United States, 16 CIT 984, 984, 807 F. Supp. 792, 793 (1992), aff'd, 16 F.3d 420 (Fed. Cir. 1993); Sharp Elecs. Corp. v. United States, 14 CIT 1, 2, 729 F. Supp. 1354, 1355 (1990)).  "The purpose of a rehearing is not to relitigate the case but, rather, to rectify a fundamental or

significant flaw in the original proceeding." Id. (citing Arthur

J. Humphreys, Inc. v. United States, 15 CIT 427, 427, 771 F. Supp.

1239, 1241 (1991), aff'd and adopted, 973 F.2d 1554 (Fed. Cir.

1992)).   "[A] court's previous decision will not be disturbed

unless it is 'manifestly inadequate.'" Id. (quoting St. Paul, 16

CIT at 984, 807 F. Supp. at 793).[1]

## Discussion

In Japan Final, Commerce did not explain which of the three

statutory foreign like product definitions[2] under 19 U.S.C. §

---

[1]TKS fashions its motion for reconsideration as a "motion to alter or amend judgment" under USCIT Rule 59(e). Traditionally, however, this court has entertained motions for reconsideration as motions made pursuant to USCIT Rule 59(a). See, e.g., NEC Corp. v. Dep't of Commerce, 24 CIT ___, ___, 86 F. Supp. 2d 1281, 1282 (2000); Asociacion, 22 CIT at ___, 19 F. Supp. 2d at 1118; Union Camp Corp. v. United States, 21 CIT 371, 371-72, 963 F. Supp. 1212, 1212-13 (1997); St. Paul, 16 CIT at 984, 807 F. Supp. at 793. But see Apple Computer, Inc. v. United States, 14 CIT 719, 720, 749 F. Supp. 1142, 1144 (1990)(treating a motion to alter or amend judgment under USCIT Rule 59(e) as a motion for reconsideration). At any rate, this court's precedent dealing with USCIT Rule 59(a) sets out the proper test for determining whether a motion for reconsideration should be granted. Moreover, the treatment of TKS's motion as arising under USCIT Rule 59(a) does not place TKS at any procedural disadvantage. See Fed. R. App. P. 4(a)(4)(A)(treating the motions to alter or amend judgment and motions for rehearing under the Fed. R. Civ. P. as the same for purposes of the deadline for filing an appeal).

[2]The statute defines "foreign like product" as,

[M]erchandise in the first of the following categories in respect of which a determination . . . can be

1677(16)(1994) it relied upon in classifying large newspaper printing presses ("LNPPs") sold in Japan as foreign like product; therefore, we remanded this issue for Commerce's reconsideration. See Mitsubishi I, 22 CIT at ___, 15 F. Supp. 2d at 829. In its first remand determination of December 21, 1998, Commerce explained that it had relied upon the definition of foreign like product at § 1677(16)(C). See First Remand Determ. at 17. Commerce did not,

_____

satisfactorily made:

(A) The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise--

(i) produced in the same country and by the same person as the subject merchandise,
(ii) like that merchandise in component material or materials and in the purposes for which used, and
(iii) approximately equal in commercial value to that merchandise.

(C) Merchandise--B

(i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,
(ii) like that merchandise in the purposes for which used, and
(iii) which the administering authority determines may reasonably be compared with that merchandise.

19 U.S.C. § 1677(16)(1994).

however, explain the factual basis for its determination that the LNPPs sold in Japan and the United States could "reasonably be compared" under 19 U.S.C. § 1677(16)(C)(iii).  See Mitsubishi II, 23 CIT at ___, 54 F. Supp. 2d at 1197.

Instead, in its first remand determination, Commerce referred to its twenty percent "difmer" guideline.  Under the difmer guideline, if the difmer adjustment to normal value, see 19 U.S.C. § 1677b(a)(6)(C)(ii), exceeds twenty percent, Commerce will not make a finding that the home-market product is reasonably comparable to the exported good, unless it can explain how the comparison is nevertheless reasonable.  See Mitsubishi III, 24 CIT at ___, 97 F. Supp. 2d at 1205-06 (citing Policy Bulletin 92.2 (July 29, 1992)).  Based on Commerce's remand discussion, it appeared to the Court that Commerce had found in its investigation of Japanese LNPPs that the difmer adjustment exceeded the twenty percent threshold.  See id. at ___, 97 F. Supp. 2d at 1206. Therefore, because Commerce's first remand determination did not explain the factual basis for its decision that the Japanese and U.S. LNPPs were nevertheless reasonably comparable, we remanded for a second time.  See id.

In its second remand determination, Commerce clarified that it did not conduct a difmer analysis.  See id. at ___, 97 F. Supp. 2d

at 1207 (citing Second Remand Determ. at 1). "Because Commerce did not in fact find that the difmer adjustment exceeded twenty percent, Commerce did not make a presumptive finding that the Japanese and U.S. LNPPs were not reasonably comparable." Id. In addition, Commerce finally explained the factual basis for its determination that the home-market and U.S. LNPPs could "reasonably be compared" under § 1677(16)(C)(iii), basing its finding on record evidence that the home-market and U.S. products shared numerous detailed product characteristics. See id. at ___, 97 F. Supp. 2d at 1208. Because the factual basis for Commerce's determination was supported by substantial evidence, this Court sustained Commerce's second remand determination. See id. at ___, 97 F. Supp. 2d at 1209.

Moving for reconsideration, TKS now argues that the Court "misapprehended [Commerce's] position regarding the basis for its 'foreign like product' finding." TKS's Mot. to Alter or Reconsider J. at 6. According to TKS, Commerce referred to shared physical characteristics simply as collateral support for the true basis of its decision. See id. TKS maintains that the true basis for Commerce's foreign like product finding was its contention that the term "may reasonably be compared" under § 1677(16)(C)(iii) should be flexibly interpreted depending on the statutory context within

which the "foreign like product" definition is being applied.  See id. at 6-7.  "Thus," TKS continues, "by asserting that the phrase 'may reasonably be compared' should be interpreted flexibly, [Commerce] is essentially asserting that the term 'foreign like product' has different meanings, depending on the statutory context to which it is applied."  Id. at 7.

Nevertheless, despite TKS's arguments, we remain convinced that the evidence of shared product characteristics served as the primary basis for Commerce's reasonable comparability finding.  In Mitsubishi II, we made it clear that Commerce needed to explain the basis for its finding of reasonable comparability.  See 23 CIT at __, 54 F. Supp. 2d at 1197-98.  It is not accurate, however, to assert that Commerce based its conclusion that the Japanese and U.S. LNPPs may reasonably be compared on its argument that the "reasonably comparable" prong of § 1677(16)(C)(iii) may be flexibly interpreted.  Rather, in arguing that the phrase "may reasonably be compared" of § 1677(16)(C)(iii) should be construed within the statutory context to which it is being applied, Commerce was merely explaining its legal interpretation of the term.  Commerce's legal interpretation, however, did not answer whether the Japanese and U.S. LNPPs were reasonably comparable.  Instead, Commerce's shared-product-characteristic explanation provided the only factual basis

for its determination.  Therefore, we concluded that the basis for Commerce's reasonable comparability finding was its reliance on the evidence of shared product characteristics.  See Bowman Transp. Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 286 (1974)(The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.").

We recognize that Commerce dedicated a good portion of its second remand determination to explaining its flexible construction of § 1677(16)(C)(iii)'s "may reasonably be compared" requirement. See Second Remand Determ. at 5-9.  Nevertheless, it was apparent that, in including this discussion, Commerce was responding to our focus on the difmer adjustment in Mitsubishi II, 23 CIT at ___, 54 F. Supp. 2d at 1195-98.  In its second remand determination, Commerce was in essence explaining that the twenty percent difmer guideline was not relevant to the CV profit calculation under 19 U.S.C. § 1677b(e)(2)(A).  As we stated in Mitsubishi III, however, "we recognize[d] that Commerce's practice [was] to apply the twenty percent difmer guideline solely to determine whether price-to-price comparisons [(i.e., normal value to U.S. price)] [were] feasible." 24 CIT at ___, 97 F. Supp. 2d at 1207.

Nevertheless, under Commerce's difmer practice, a finding that the difmer adjustment to normal value exceeds twenty percent is a

presumptive finding that the products may not reasonably be compared under § 1677(16)(C)(iii). See Policy Bulletin 92.2 (July 29, 1992). Based on Commerce's discussion of the difmer guideline in its first remand determination, it appeared that Commerce had found that the difmer adjustment exceeded the twenty percent threshold; therefore, it appeared that Commerce had made a presumptive finding that the Japanese and U.S. LNPPs were not reasonably comparable. See Mitsubishi III, 24 CIT at ___, 97 F. Supp. 2d at 1206. Thus, in Mitsubishi II, we were concerned that, for the purpose of determining whether it was feasible to compare the home-market price (normal value) to the U.S. price in determining the dumping margin, Commerce had found that no foreign like product existed. Such a finding, then, would have been inconsistent with Commerce's calculation of CV profit under § 1677b(e)(2)(A) based on sales of a foreign like product.

As Commerce clarified in its second remand determination, however, it did not in fact conduct a difmer analysis in its investigation of Japanese LNPPs. See Second Remand Determ. at 1. Accordingly, Commerce did not make a finding that no foreign like product was available, and its decision to base CV profit on sales of a foreign like product under § 1677b(e)(2)(A) was not necessarily inconsistent with its decision not to make price-to-

price comparisons.

Thus, in <u>Mitsubishi III</u>, we declined "to decide whether it [was] permissible to interpret the language 'may reasonably be compared' differently depending on which specific provision of the antidumping statute is implicated."  24 CIT at ___, 97 F. Supp. 2d at 1207.  While we expressed concern with such an interpretation of § 1677(16)(C)(iii), it was apparent that Commerce had not in fact applied the reasonable comparability prong inconsistently in its investigation of Japanese LNPPs.  Therefore, the issue was not directly before us.

TKS further asserts, however, that Commerce's reference to shared product characteristics for its finding of reasonable comparability was limited to the CV profit context.  <u>See</u> TKS's Mot. to Alter or Reconsider J. at 10.  According to TKS, "[i]n any other statutory context, such as home market viability or price-to-price comparisons, [Commerce] would provide a different rationale for its foreign like product finding . . . ."  <u>Id.</u>  Because "[t]he Court has not stated whether [Commerce's] determination is appropriate within the limited context of calculating CV profit[,]" TKS continues, "the Court has determined that shared physical characteristics support a foreign like product finding in <u>all</u> statutory contexts[,]" thereby misconstruing Commerce's position.

Id. at 11. "As a result," TKS concludes, "the Court should reconsider its judgment and instead decide whether [Commerce's] flexible interpretation of 'foreign like product' depending on the statutory context is" permissible, because that issue is squarely before the Court. Id.

TKS bases its argument--that Commerce's reference to shared product characteristics for its finding of reasonable comparability was limited to the CV profit context--on an isolated sentence from Commerce's second remand determination:

> Finally, for purposes of calculating CV profit, we determine that TKS's home market LNPP may reasonably be compared to its sales of LNPP in the United States based on evidence that LNPP in both markets share detailed product characteristics, even if the custom-made combination of precise specifications makes price-to-price comparisons impracticable.

Second Remand Determ. at 2 (emphasis added).

It is clear to the Court, however, that, in this case, the shared product characteristics formed the basis of Commerce's foreign like product determination in all statutory contexts. Commerce never asserted that a foreign like product of Japanese LNPPs only existed in the context of the CV profit calculation. Rather, Commerce determined that a foreign like product existed regardless of statutory context. See Japan Final at 38,146-147. For example, in declining to compare normal value to the U.S. price

in calculating the dumping margin, Commerce stated, "The fact that it was not practicable to compare specific models of LNPP is not the same as saying that home market LNPP may not reasonably be compared with the subject merchandise (LNPP)."   First Remand Determ. at 17.   Thus, Commerce never found that Japanese and U.S. LNPPs were reasonably comparable under § 1677(16)(C)(iii) in some statutory contexts but not others.  Because there was no indication that Commerce had applied the reasonable comparability prong inconsistently in this case, we appropriately declined to decide whether Commerce's flexible interpretation of "may reasonably be compared" was permissible.

Having reviewed TKS's arguments, we conclude that we did not misapprehend Commerce's position with regard to its foreign like product determination.  Accordingly, we did not substitute our own judgment for that of Commerce's foreign like product determination in Mitsubishi III.  TKS's motion for reconsideration is denied.  An order will be entered accordingly.

Donald C. Pogue
Judge

Dated:    August 8, 2000
          New York, New York