**Slip Op. 01-2**

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|                                                        |     |                                              |
| ------------------------------------------------------ | --- | -------------------------------------------- |
|                                                        | :   |                                              |
|                                                        | :   |                                              |
| **NOVOSTEEL SA,**                                      | :   |                                              |
|                                                        | :   |                                              |
|     **Plaintiff,**                 | :   |                                              |
|                                                        | :   |                                              |
|   v.                                          | :   | **Court No. 99-05-00299**                    |
|                                                        | :   | **BEFORE: CARMAN, CHIEF**                    |
|                                                        | :   | **JUDGE**                                    |
| **UNITED STATES,**                                     | :   |                                              |
|                                                        | :   |                                              |
|     **Defendant,**                 | :   |                                              |
|                                                        | :   |                                              |
| **and**                                                | :   |                                              |
|                                                        | :   |                                              |
| **BETHLEHEM STEEL CORPORATION;**                       | :   |                                              |
| **U.S. STEEL GROUP, A UNIT OF**                        | :   |                                              |
| **USX CORPORATION**                                    | :   |                                              |
|                                                        | :   |                                              |
|     **Defendant-Intervenors.**     | :   |                                              |

_____:

[Plaintiff's Rule 56.2 motion for judgment on the agency record is denied. Commerce's final scope determination is sustained.]

Plaintiff moves for judgment upon the agency record pursuant to U.S. CIT R. 56.2, contending the United States Department of Commerce's (Commerce) determination that profile slabs imported by the Plaintiff are within the scope of antidumping and countervailing duty orders on certain cut-to-length carbon steel plate from Germany is not supported by substantial evidence on the record and is otherwise not in accordance with law.

Defendant, and Defendant-Intervenors oppose Plaintiff's motion, asserting Commerce's determination is supported by substantial evidence on the record and is otherwise in accordance with law.

_Held_: This Court holds that Commerce's final scope determination is supported by substantial evidence on the record and is otherwise in accordance with law.

Dated: January 18, 2001

*Edmund Maciorowski, P.C.* (*Edmund Maciorowski*, *Pamela L. St. Peter*), Bloomfield Hills, Michigan, for Plaintiff.

*David W. Ogden*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *Velta A. Melnbrencis*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Bernd G. Janzen*, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, for Defendant.

*Dewey Ballantine LLP* (*Michael H. Stein*, *Bradford L. Ward*, *Michael Castellano*, *Joon Y. (Peter) Kim*) Washington, D.C., for Defendant-Intervenors.


**OPINION**

**CARMAN, CHIEF JUDGE:**  Plaintiff, Novosteel SA (Novosteel), an importer of steel profile slabs produced in Germany by Reiner Brach GmH & Co. KG (Reiner Brach), challenges an unpublished scope determination issued by the United States Department of Commerce (Commerce) finding Reiner Brach's profile slabs are within the class or kind of merchandise covered by the antidumping and countervailing duty orders on certain cut-to-length carbon steel plate from Germany.  *See Final Scope Determination Regarding Profile Slabs - Antidumping and Countervailing Duty Orders on Certain Cut-to-Length Carbon Steel Plate from Germany*, U.S. Department of Commerce Internal Memorandum from Roland MacDonald to Joseph Spetrini (May 18, 1999) (*Final Scope Determination*).  Plaintiff moves for judgment upon the agency record pursuant to U.S. CIT R. 56.2, contending Commerce's *Final Scope Determination* is not supported by substantial evidence on the record and is otherwise not in accordance with law.

Defendant and Defendant-Intervenors oppose Plaintiff's motion, contending Commerce's *Final Scope Determination* should be sustained.  This Court denies Plaintiff's motion for judgment upon the agency record.  This Court has jurisdiction over this matter pursuant to 28

U.S.C. § 1581(c) (1994).


BACKGROUND

On August 17 and August 19, 1993, respectively, the Department of Commerce published

countervailing and antidumping duty orders on cut-to-length carbon steel plate from Germany.

*See Countervailing Duty Orders and Amendment to Final Affirmative Countervailing Duty*

*Determinations:  Certain Steel Products from Germany*, 58 Fed. Reg. 43,756 (Aug. 17, 1993)

(*CVD Order*), and *Antidumping Duty Orders and Amendments to Final Determinations of Sales*

*at Less Than Fair Value:  Certain Hot-Rolled Carbon Steel Flat Products, Certain Cold-Rolled*

*Carbon Steel Flat Products, Certain Corrosion-Resistant Carbon Steel Flat Products and*

*Certain Cut-to-Length Carbon Steel Plate From Germany*, 58 Fed. Reg. 44,170 (Aug. 19, 1993)

(*AD Order*)[collectively "*Plate Orders*"].  These two orders, in relevant part, defined "certain

cut-to-length carbon steel plate" to include:

> certain hot-rolled carbon steel flat-rolled products in straight lengths, of rectangular
> shape, hot rolled, neither clad, plated, nor coated with metal, whether or not painted,
> varnished, or coated with plastics or other nonmetallic substances, 4.75 millimeters or
> more in thickness and of a width which exceeds 150 millimeters and measures at least
> twice the thickness . . . .

*CVD Order*, 58 Fed. Reg. at 43,758; *AD Order,* 58 Fed. Reg. at 44,170 (defining the scope by

reference to "Appendix I to the Final Determination of Sales at Less Than Fair Value: Certain

Cold-Rolled Carbon Steel Flat Products from Argentina (58 FR 37,062, July 9, 1993).").[1]  The

--------

[1]  The scope of the countervailing and antidumping duty orders on cut-to-length carbon
steel plate from Germany was identical to the scope set forth in the final determinations.
*Compare Countervailing Duty Orders and Amendment to Final Affirmative Countervailing Duty
Determinations:  Certain Steel Products from Germany*, 58 Fed. Reg. 43,756 (Aug. 17, 1993)
(*CVD Order*), *with Final Affirmative Countervailing Duty Determinations: Certain Steel
Products from Germany*, 58 Fed. Reg. 37,315, 37,315 (July 9, 1993)(*CVD Final Determination*)
(defining investigation's scope by reference to "the 'Scope Appendix' to the Final Affirmative

scope of the *Plate Orders* also listed various subheadings within headings 7208, 7210, 7211, and 7212 of the Harmonized Tariff Schedule of the United States (HTSUS), under which the subject merchandise was classifiable.

Novosteel began importing Reiner Brach profile slab from Germany into the United States through its wholly owned subsidiary Barzelex, Inc. (Barzelex) in June, 1994. Prior to importing the goods into the United States, Barzelex obtained a Custom's Ruling Letter classifying Reiner Brach's product under heading 7207, HTSUS, as "semifinished products of iron or non-alloy steel." *Ruling Letter 896625: The Tariff Classification of Profiling Slabs from Germany* (Customs Service Apr. 21, 1994). From June, 1994, to July, 1998, Barzelex imported Reiner Brach profile slabs into the United States under heading 7207. (Plaintiff, Novosteel SA's Motion and Brief in Support of Its Motion Under Rule 56.2 for Judgment Upon the Agency Record (Pl.'s Br.) at 6.) Because heading 7207, HTSUS, was not within the scope of the plate orders, Customs did not require the deposit of estimated antidumping or countervailing duties on the profile slabs at the time of entry. In June, 1998, the import specialists for the Ports of Philadelphia and Cleveland first informed Barzelex that a review of its entries determined the slabs to be within the scope of the *Plate Orders*. (Id.) The Port of Cleveland import specialist advised Novosteel to file a scope inquiry with the Department of Commerce pursuant to 19 C.F.R. § 351.225 (1998). (Id. at 7.) From August 3, 1998 until February 19, 1999, Novosteel effectuated 14 entries of Reiner Brach profile slab, each of which was rejected by the Customs

---

Countervailing Duty Determination: Certain Steel Products from Austria [, 58 Fed. Reg. 37,217, 37,225 (July 9, 1993)]."). The amended final determinations (*Plate Orders*) corrected certain ministerial errors unrelated to the scope description.

Service.[2]  (Id. at 12.)  No additional entries were made after February 19, 1999.  (Id.)

On August 17, 1998, Novosteel initiated a scope inquiry pursuant to 19 C.F.R. §

351.225(c) (1998).[3]  Commerce issued its preliminary scope determination on March 23, 1999,

concluding Reiner Brach profile slab was within the scope of the antidumping and countervailing

duty orders on certain cut-to-length carbon steel plate from Germany.  *See Preliminary Scope*

*Determination Regarding Profile Slabs - Antidumping and Countervailing Duty Orders on*

*Certain Cut-to-Length Carbon Steel Plate from Germany*, U.S. Department of Commerce

Internal Memorandum from Roland MacDonald to Joseph Spetrini (Mar. 23, 1999) (*Preliminary*

*Scope Determination*).  Following the submission of comments by Novosteel and domestic

producers, Commerce issued its *Final Scope Determination* on May 18, 1999.

In its *Final Scope Determination*, Commerce determined that "based upon a review of the

underlying record – the petition, the Department and ITC determinations, and the orders . . . the

profile slabs . . . are hot-rolled carbon steel products meeting the dimensional characteristics of

subject merchandise."  *Final Scope Determination* at 3.  However, Commerce was "unable to

conclude by reference to the underlying scope descriptions whether these slabs also qualify as

flat-rolled[4] products covered by the orders."  *Id.*  Because Commerce could not determine

---

[2] Protests were filed against the rejection of those entries.  The protests were denied.  A summons and complaint have been filed in this matter under Court No. 99-09-00613.  (Plaintiff, Novosteel SA's Motion and Brief in Support of Its Motion Under Rule 56.2 for Judgment Upon the Agency Record (Pl.'s Br.) at 12, n. 19.)

[3] The regulation that governed Commerce's scope determination in this case, 19 C.F.R. § 351.225 (1998), became effective June 18, 1997, and is applicable to scope inquiries commenced after that date.  *See Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,295, 27,403-05 (Dep't. Comm. May 19, 1997) (final rule).  Section 351.225(c) provides that "[a]ny interested party may apply for a ruling as to whether a particular product is within the scope of an order[.]"

[4] Throughout this opinion this Court will make references to "flat-rolled," "finished," "plate," "slab," and "semi-finished" products.  The terms "plate," "flat-rolled," and "finished"

whether Reiner Brach profile slab was within the scope of the *Plate Orders* based on its review

of the petition and other relevant documents, it applied the *Diversified Products*[5] criteria.  Based

upon its review of the physical characteristics, ultimate use, expectations of ultimate purchasers,

channels of trade, and manner of advertising and display of Reiner Brach's profile slab,

Commerce determined Reiner Brach profile slab is of the same class or kind of merchandise as

certain cut-to-length carbon steel plate and, therefore, falls within the scope of the *Plate Orders*.

*See Id*.


CONTENTIONS OF THE PARTIES

A.    *Plaintiff*

Plaintiff raises two primary arguments in challenging Commerce's *Final Scope*

*Determination*.  First, Plaintiff argues the record established before Commerce unambiguously

excludes Reiner Brach profile slabs from the scope of the *Plate Orders*.  Plaintiff contends this

should have ended Commerce's inquiry, rendering a *Diversified Products* analysis superfluous.

---

should be understood to represent overlapping sets of products.  Similarly, the terms "slab" and "semi-finished" are also interchangeable.

[5] In *Diversified Products Corp. v. United States*, 572 F. Supp. 883, 889 (Ct. Int'l Trade 1983), this Court reviewed, and ultimately upheld, Commerce's consideration of five factors in determining whether merchandise under review was of the "same class or kind" as merchandise explicitly within the scope of an outstanding antidumping duty order:  (1) the physical characteristics of the merchandise; (2) the expectations of the ultimate purchasers; (3) the ultimate use of the merchandise; (4) the channels of trade in which the merchandise moves; and (5) cost.  These criteria have been codified at 19 C.F.R. § 351.225(k)(2) (1998), and are utilized by Commerce when an examination of the petition, initial investigations and determinations of Commerce and the ITC do not resolve definitively whether certain merchandise is within the scope of an outstanding antidumping and/or countervailing duty order.  *See* 19 C.F.R. § 351.225(k)(1) & (2).  The fifth factor in the regulation now considers "[t]he manner in which the product is advertised and displayed," a change from the original factor of "cost."  This difference does not alter the analysis required by *Diversified Products*.

(Pl.'s Br. at 17.)  Plaintiff maintains there is "ample evidence to establish that Reiner Brach slab

is not 'flat-rolled' as required by the order[s]," and, is, therefore, unambiguously outside the

scope of the orders.  (Id. at 18.)

Second, Plaintiff asserts Commerce reached a determination that is not supported by

substantial evidence on the record in concluding Reiner Brach's profile slab is of the same class

or kind of merchandise as flat-rolled cut-to-length carbon steel plate based on its application of

the *Diversified Products* criteria.  (Id. at 21.)  Plaintiff contends Reiner Brach's profile slab is a

"semi-finished" steel product which does not share the same physical characteristics, ultimate

use, expectations of ultimate purchasers, channels of trade, or manner of advertising and display

as the cut-to-length carbon steel plate that was the subject of the investigations by Commerce and

the ITC.  (Id.)

B.      *Defendant*

Defendant rejects Plaintiff's contentions and argues this Court should deny Plaintiff's

motion for judgment upon the agency record.  Defendant asserts Commerce's *Final Scope*

*Determination* is supported by substantial evidence on the record and is otherwise in accordance

with law.  Defendant raises two primary arguments in support of this assertion.

First, Defendant argues Commerce properly concluded the definition of cut-to-length

carbon steel plate contained in the petition, initial investigations, and determinations of

Commerce and the ITC did not definitively resolve whether Reiner Brach's profile slab was

within the scope of the *Plate Orders*.  Defendant notes that although "it is undisputed that Reiner

Brach's profile slabs are hot-rolled carbon steel products of rectangular shape that meet the

dimensional specifications of the plate orders," Commerce found it was unclear "whether Reiner

Brach's profile slabs could also be characterized as finished, flat-rolled products." (Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment Upon the Agency Record (Def.'s Br.) at 19-20.) Defendant contends that based on Commerce's conclusion that the underlying scope record was not dispositive of the issue, Commerce properly resorted to an analysis utilizing the *Diversified Products* criteria.

Second, Defendant maintains Commerce's conclusion that Reiner Brach profile slab is within the scope of the *Plate Orders*, based on the *Diversified Products* criteria, is supported by substantial evidence on the record and is otherwise in accordance with law. (Id. at 28.)

C. *Defendant-Intervenors*

Because this Court finds Defendant-Intervenors' arguments in this matter substantially similar to those presented by the Defendant, this Court will not recount them in this opinion, although they have been duly considered.

STANDARD OF REVIEW

In reviewing a scope determination, this Court must sustain Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting*, *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *accord Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984). Substantial evidence "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). It is "less than a preponderance, but

more than a scintilla." *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999). This Court will sustain Commerce's determination "if it is reasonable and supported by the record as a whole, including whatever fairly detracts from the substantiality of the evidence." *Tianjin Mach. Imp. & Exp. Corp. v. United States*, 16 CIT 1020, 1023 (1992), *citing*, *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1561 (Fed. Cir. 1984).

DISCUSSION

Plaintiff's challenge to Commerce's *Final Scope Determination* raises two issues: (1) whether Commerce properly resorted to application of the *Diversified Products* criteria; and (2) whether Commerce's *Diversified Products* analysis is supported by substantial evidence on the record. The Court will address these issues in turn.

*A. Whether Commerce Properly Resorted to Application of the Diversified Products Criteria*

Initially, the Court notes "[t]he Commerce Department enjoys substantial freedom to interpret and clarify its antidumping duty orders. But while it may interpret those orders, it may not change them." *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995), *citing*, *Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990). In considering whether a particular product is included within the scope of an existing order, the applicable regulation directs Commerce to first examine "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1) (1998). "When the above criteria are not dispositive, [Commerce] will further consider . . ." the so-called *Diversified Products* criteria. 19 C.F.R. § 351.225(k)(2) (1998). As

noted previously, the *Plate Orders*, in relevant part, define cut-to-length carbon steel plate to

include:

> Certain hot-rolled carbon steel flat-rolled products in straight lengths, of rectangular
> shape, hot rolled, neither clad, plated, nor coated with metal, whether or not painted,
> varnished, or coated with plastics or other nonmetallic substances, 4.75 millimeters or
> more in thickness and of a width which exceeds 150 millimeters and measures at least
> twice the thickness . . . .

*CVD Order*, 58 Fed. Reg. at 43,758; *AD Order,* 58 Fed. Reg. at 44,170 (defining the scope by

reference to "Appendix I to the Final Determination of Sales at Less Than Fair Value: Certain

Cold-Rolled Carbon Steel Flat Products from Argentina (58 FR 37,062, July 9, 1993).").

Plaintiff argues that the record in this matter unambiguously excludes Reiner Brach

profile slab from the scope of the *Plate Orders*, and, therefore, Commerce improperly resorted to

application of the *Diversified Products* criteria.  Defendant and Defendant-Intervenors respond

that Commerce properly applied the *Diversified Products* criteria after concluding the petitions,

initial investigations, and determinations of Commerce and the ITC were not dispositive as to

whether Reiner Brach profile slab is within the scope of the *Plate Orders*.

The Court finds Commerce properly resorted to application of the *Diversified Products*

criteria.  The record neither unambiguously excludes Reiner Brach profile slab from the scope of

the *Plate Orders*, nor unambiguously includes Reiner Brach profile slab in the scope of the *Plate*

*Orders*.

Plaintiff initially contends "[n]owhere in the petition was there an indication, either

express or implied, that petitioner's [sic] intended that the class or kind of goods subject to the

investigations and resulting Orders should include slab."  (Pl.'s Br. at 7.)  Plaintiff supports this

contention by noting Petitioners did not identify Reiner Brach, Novosteel, or Barzelex as

producers, exporters, or importers of the subject merchandise.  (Id.)  Plaintiff also notes the ITC

never sent a questionnaire to Reiner Brach, Novosteel, or Barzelex during the course of its material injury investigation. (Id. at 8.) Furthermore, Plaintiff maintains profile slab was not considered in Commerce's investigation because it was not among the products specifically listed or described in the notice of initiation of the antidumping and countervailing duty investigations. (Id. at 20.)

The Court finds Plaintiff's arguments unpersuasive. As the Department of Commerce noted in its *Final Scope Determination*, "'{t}he absence of a reference in a petition or determination to a particular product, such as profile slab, does not necessarily indicate that it is not covered by the product category subject to an AD or CVD action.'" *Final Scope Determination* at 4, *quoting Final Scope Ruling – AD and CVD Orders on Cut-to-Length Carbon Steel Plate from Brazil – Request by Wirth Limited for a Ruling on Profile Slab* at 16 (April 2, 1997) (*Wirth's Final Scope Ruling*). This position is clearly supported by numerous decisions in which this Court has held "a petitioner is not required to circumscribe the entire universe of articles that might possibly be covered by the order it seeks." *Nitta Indus. Corp. v. United States*, 16 CIT 244, 248 (1992), *citing*, *American NTN Bearing Mfg. Corp. v. United States*, 739 F. Supp. 1555, 1562 (Ct. Int'l Trade 1990); *see also Makita Corp. v. United States*, 974 F. Supp. 770, 777 (Ct. Int'l Trade 1997). Additionally, profile slab is not among those steel products specifically excluded from the scope in the petitions and other relevant documents, further contradicting Plaintiff's claim that Reiner Brach profile slab is unambiguously excluded from the scope of the *Plate Orders*. *See Petition for the Imposition of Antidumping Duties on Imports of Cut-to-Length Carbon Steel Plate from Germany*, *reproduced* at Pl.'s App. Tab 1, Ex. 5, at 7-8 (excluding flat carbon steel products and universal mill plate "in coils" and plate "that is clad, or plated or coated with metal" from scope of petitions) (footnotes omitted) (*AD Petition*); *Petition for the Imposition of Countervailing Duties Against Certain Steel Flat Products from Germany*,

*reproduced* at Pl.'s App. Tab 1, Ex. 6, at 17 (same) (*CVD Petition*).  The very reason Commerce

has provided for regulations governing the conduct of scope inquiries is because "the

descriptions of subject merchandise contained in the Department's determinations must be

written in general terms."  19 C.F.R. § 351.225(a) (1998).  The resulting ambiguities are resolved

by resort to a scope inquiry.

Plaintiff continues its argument that Petitioners did not intend profile slab to be included

within the scope of the *Plate Orders* by asserting that the various HTSUS headings cited as part

of the scope description did not include heading 7207 (under which Customs classified Reiner

Brach profile slab in 1994).[6]  (Pl.'s Br. at 9.)  Plaintiff maintains "Petitioners described the

merchandise included within the order as Cut-to-Length Carbon Steel Plate within the context of

HTS[US] nomenclature . . . ."  (Id. at 7.)  This, Plaintiff argues, clearly indicates a lack of intent

to include Reiner Brach profile slab within the scope of the *Plate Orders*.  (Id.)

Again, the Court finds Plaintiff's arguments unpersuasive.  First, the Court notes the

petitions provide a description of merchandise subject to investigation by reference to several

criteria that bear no relation to HTSUS principles.  Specifically, the petitions provide

dimensional measurements of the subject merchandise that are not associated with the HTSUS.

*See AD Petition*, *reproduced* at Pl.'s App. Tab 1, Ex. 5 at 7-8 (defining cut-to-length carbon steel

plate to include "flat carbon steel products of a thickness of 4.75 mm or more" and "universal

mill plate, (a flat rolled product with a width exceeding 1,250 mm, and a thickness of not less

than 4 mm)"); *CVD Petition, reproduced* at Pl.'s App. Tab 1, Ex. 6 at 17 (same).  The petitions

also define the scope of subject merchandise by reference to American Iron and Steel Institute

(AISI) product categories and American Society for Testing and Materials (ASTM) standard

_____

[6] *See Ruling Letter 896625: The Tariff Classification of Profiling Slabs from Germany*
(Customs Service Apr. 21, 1994).

specification numbers.  *See AD Petition, reproduced* at Pl.'s App. Tab 1, Ex. 5 at 10, n.21 (referring to Exhibit 4 in the original AD petition); *CVD Petition, reproduced* at Pl.'s App. Tab 1, Ex. 6 at 19, n.42 (referring to Exhibit 6 in the original CVD petition).  Second, while Plaintiff is correct that the petitions describe the subject merchandise by reference to several HTSUS headings, petitioners are required by regulation to include these headings.  *See* 19 C.F.R. § 353.12(b)(4) (1996) (providing petitions requesting imposition of antidumping duties shall include "[a] detailed description of the merchandise that defines the requested scope of the investigation, including . . . its current U.S. tariff classification number"); 19 C.F.R.§ 355.12(b)(4) (1996) (similar language applying to petitions requesting imposition of countervailing duties).  Finally, Commerce specifically stated in the *Plate Orders,* "[a]lthough the Harmonized Tariff Schedule of the United States (HTS) subheadings are provided for convenience and customs purposes, our written descriptions of the scope of these proceedings are dispositive."  *CVD Order*, 58 Fed. Reg. at 43,757; *AD Order*, 58 Fed. Reg. at 44,170 (referring to Appendix I to the *Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Argentina*, 58 Fed. Reg. 37,062, 37,063 (July 9, 1993)).  This Court has held "[t]he inclusion of various HTSUS headings in a petition ordinarily should not be interpreted to exclude merchandise determined to be within the scope of the . . . orders but classified under an HTSUS heading not listed in the petition."  *Wirth Ltd. v. United States*, 5 F. Supp. 2d 968, 977-78 (Ct. Int'l Trade 1998), *aff'd*, 185 F.3d 882 (Fed. Cir. 1999).

After properly determining that the Reiner Brach profile slabs fall within the scope of the *Plate Orders* to the extent they "are hot-rolled carbon steel products meeting the dimensional criteria of the subject merchandise," Commerce also correctly determined that "reference to the underlying scope descriptions" did not reveal whether the Reiner Brach profile slabs also qualified as "flat-rolled products covered by the orders." *Final Scope Determination* at 3.

(footnote omitted).

The definition of "flat-rolled product" used throughout these proceedings is the one adopted by Petitioners.[7]  Petitioners defined "flat-rolled product" by reference to the Harmonized Tariff System of the United States (HTSUS), Chapter 72, Note 1(k).  Note 1(k), in relevant part, defines "flat-rolled products" as:

> "Rolled products of solid rectangular (other than square) cross section, which do not conform to the definition at (ij) above [semi finished] . . . ."

Note 1(k) excludes those items that are "semi-finished," as defined by HTSUS, Chapter 72, Note 1(ij).  Note 1(ij) defines semi-finished products as "[o]ther products of solid section, *which have not been further worked than subjected to primary hot-rolling* or roughly shaped by forging, including blanks for angles, shapes or sections."  (emphasis added).

Thus, the issue is whether Reiner Brach profile slab remains a semi-finished product or has been "further worked."  Defendant-Intervenors contend "an analysis of 'further worked'," a term derived from the HTSUS, "while instructive, is not determinative of the scope" because "flat-rolled" is the term used in the underlying scope descriptions.  (Defendant-Intervenors' Submission of Supplementary Material Requested by the Court (Def.-Intvr.'s Supp. Sub.) at Item III.)  The Court agrees with Defendant-Intervenors that the operative term is "flat-rolled" since that is the term used in the narrative scope description.  The Court observes, however, that the term "further worked" is helpful in discerning the difference between semi-finished and finished products.  The term has been used to distinguish between semi-finished and finished products in every aspect of this scope inquiry to date.  The petitions contained a reference to the term, as did the *Preliminary* and *Final Scope Determinations*.  *See AD Petition* at 6, n.5; *Preliminary Scope*

---

[7]  The terms Petitioners, Defendant-Intervenors, and Domestic Producers refer to the same parties in this case.

*Determination* at 5; *Final Scope Determination* at 4.

Defendant-Intervenors argue the term "further worked" is a HTSUS concept and, as was noted in *Wirth,* HTSUS principles are not dispositive in a scope inquiry. (Def.-Intvr.'s Supp. Sub. at Item III.) This characterization is inaccurate. The fact that the definition derives from the HTSUS is irrelevant to whether it is dispositive and the weight this Court will accord the definition. The only reason "further worked" is not dispositive is because "flat-rolled" is the term used in the narrative scope description. As noted previously, the regulation only requires petitioners to include the "U.S. tariff classification number." 19 C.F.R. § 353.12(b)(4) (1996) (relating to antidumping duty petitions); 19 C.F.R. § 355.12(b)(4) (1996) (relating to countervailing duty petitions). There is no similar requirement that petitioners define terms included in the scope description by reference to the HTSUS. If the Petitioners choose to define "flat-rolled product" by reference to the HTSUS, the Court finds it is a factor to be considered, along with all factors pertinent to the issue of the intended scope of the orders. *See Smith Corona Corp. v. United States*, 915 F.2d 683, 687 (Fed. Cir. 1990).

Additionally, while Defendant-Intervenors cite *Wirth* for the proposition that "further worked" is simply instructive here, the Court in *Wirth* sustained Commerce's final scope ruling using that very term. 5 F. Supp. 2d at 979 ("Commerce's scope determination concludes CST's profile slab is 'not semi-finished, but [rather] a hot-rolled carbon steel product', and thus of the same class or kind as merchandise within the scope of the plate orders, because CST's subjecting profile slabs to hot scarfing and final rolling passes constitutes *further working* of the slab and because CST's profile slab undergoes no further processing before ultimate use.") (internal quotations omitted) (emphasis added). Therefore, the Court finds the term "further worked" helpful in clarifying the meaning of a "flat-rolled product."

No clear definition of the term "further worked" has been advanced by the parties in this case. They offer several definitions from the Additional U.S. Notes and Explanatory Notes to the Harmonized Tariff System for Chapter 72, but an examination of those sources yields no precise and uniform definition of "further worked." *Compare* HTSUS, Chapter 72, Additional U.S. Note 2, *and* Explanatory Notes: Harmonized Commodity Description and Coding System, Ch. 72, General Explanatory Note to Section XV, (IV)(C)(1) (2d ed. 1996) (Explanatory Notes), *with* Explanatory Notes, Ch. 72, subch. II, 72.07(A). There is considerable ambiguity in these definitions. Therefore, the Court finds the correct meaning of the term is "'presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary.'" *Winter-Wolff, Inc. v. United States*, 996 F. Supp. 1258, 1265 (Ct. Int'l Trade 1998), *quoting*, *Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984).

*Winter-Wolff* involved a challenge of Customs' classification of laser-treated aluminum capacitor foil imported from Switzerland. The Court's decision rested upon the definition of the term "further worked." The Court found that the defendant had not established a definite and uniform commercial meaning for the term and turned to the common meaning. The Court derived this common meaning by combining the separate dictionary definitions of "further" and "worked." *See id*. at 1263. The Court concluded "further worked" meant "to subject an existing product to some process of development, treatment, or manufacture to a greater degree or extent." *Id*. This Court adopts that definition, modifying it slightly to mean "to subject an existing product to some process of development, treatment, or manufacture beyond primary hot-rolling." This is to ensure it is consistent with the definition above in which a flat-rolled product is "further worked beyond primary hot-rolling."

Record evidence suggests that Reiner Brach possesses equipment capable of "subjecting an existing product to some process of development, treatment, or manufacture beyond primary hot-rolling," thereby creating finished, flat-rolled products.  Five pieces of evidence support this conclusion, contradicting Plaintiff's assertion that Reiner Brach's profile slabs receive only "primary hot-rolling."  First, Reiner Brach published a sales brochure indicating:  (1) the profile slabs were intended "to augment the shrinking supply of very expensive thick plate on the world steel markets"; (2) the facility uses "a hydraulic press as well as a five-roll flattening machine to back up [the] guaranty" of "[f]latness within close tolerances . . ."; and (3) the product meets flatness tolerances "acc[ording] to international standards, with excellent surface." *Final Scope Determination* at 4, *citing Reiner Brach Sales Brochure*, *reproduced* at Pl.'s App. Tab 4, Att. B, at 1-3 (Sales Brochure).  Second, Defendants note the profile slab is produced at a facility "commonly described as a two high reversing mill."  (Pl.'s Br. at 3.)  A two high reversing mill is a type of plate mill, capable of manufacturing plate products.  *See* The Making, Shaping, and Treating of Steel 864-65 (Lankford et al. eds., 10th ed. 1985)  Third, Reiner Brach profile slab is used as a finished product substitutable for heavy plate.  (Defendant-Intervenors Brief in Opposition to Plaintiff's Motion Under Rule 56.2 for Judgment Upon the Agency Record (Def.-Intvr.'s Br. at 20.)  Finally, Defendant-Intervenors argue the "ultrasonic testing [ ] performed manually on each finished slab to provide [Reiner Brach's] customers with internal integrity assurance" provides further evidence of efforts to ensure a finished product is being produced.  *Reiner Brach Sales Brochure*, *reproduced* at Pl.'s App. Tab 4, Att. B, at 1-3.

The Court declines to re-weigh the record evidence as Plaintiff urges.  Under the applicable substantial evidence standard of review, the agency rather than the reviewing court

weighs the evidence and determines its credibility.  Plaintiff argues the Sales Brochure is not credible evidence and that "Reiner Brach's mention of a flattening machine in their flyer is not evidence that a flattening machine was utilized in the production of Reiner Brach slab."  As Defendant-Intervenors correctly note, the Reiner Brach Sales Brochure contains material specifically relating to Reiner Brach profile slab and was created prior to any litigation in this matter.  Reiner Brach has never disclaimed the Sales Brochure and Plaintiff concedes it distributed the Sales Brochure to U.S. customers.  *See Novosteel Questionnaire Response*, *reproduced* at Pl.'s App. Tab 9, at 27.  It is clear that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) (internal citations and quotation marks omitted).  Defendant properly notes, "[t]he question . . . is whether a reasonable person could have drawn the inference that Reiner Brach employs a flattening machine based upon the fact that Reiner Brach claims so much in its own marketing materials."   (Def.'s Br. at 32, *citing Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).)

Therefore, Plaintiff's reliance upon *G. Heileman Brewing Co. v. United States*, 14 CIT 614 (1990), a Customs classification case requiring *de novo* review by the Court, is misapplied. Plaintiff contends the Reiner Brach Sales Brochure relied upon by both Defendant and Defendant-Intervenors is not credible evidence unless there is additional corroborating evidence. (Pl.'s Br. at 18, *citing G. Heileman Brewing Co. v. United States*, 14 CIT 614 (1990)).  Plaintiff characterizes the brochure as a "one page sales flyer" and submits it is inadequate to support Commerce's conclusion because it does not rise to the level of substantial evidence.  (Pl.'s Br. at

18; Plaintiff's Reply Brief to Defendant's and Defendant-Intervenor's Brief in Opposition to Plaintiff's Motion Under CIT Rule 56.2 for Judgment Upon the Agency Record (Pl.'s Rep. Br.) at 3.) There are two flaws in Plaintiff's argument. First, *G. Heileman*, a classification case, is simply not on point. Second, Plaintiff's interpretation of the holding in *G. Heileman* is incorrect. This Court cannot identify any portion of that opinion stating, as asserted by Plaintiff, that "the credibility of such documents [as the Reiner Brach Sales Brochure] has long been discredited by this Court in the absence of additional corroborating evidence." (Pl.'s Br. at 18.) To the contrary, *G. Heileman* specifically recognizes that, although not conclusive, "[i]n determining the classification of imported merchandise, the descriptions of the merchandise contained in marketing literature is relevant evidence." 14 CIT at 621, *citing*, *B & E Sales Co. v. United States*, 9 CIT 69, 76 (1985). The Court finds the Reiner Brach Sales Brochure is relevant evidence upon which Commerce may rely in making its determination.

In addition, the Court refuses to limit "further worked" to those production processes outlined in *Wirth's Final Scope Ruling* and *Wirth Ltd. v. United States,* 5 F. Supp. 2d 968 (Ct. Int'l Trade 1998). *Wirth* involved a scope inquiry to determine whether profile slab from Brazil was within the class or kind of merchandise covered by the antidumping and countervailing duty orders on certain cut-to-length carbon steel plate from Brazil. The scope of the orders on certain cut-to-length carbon steel plate from Brazil was identical to that of the *Plate Orders* in this case.[8]

---

[8] *Compare Antidumping Duty Orders and Amendments to Final Determinations of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Cold-Rolled Carbon Steel Flat Products, Certain Corrosion-Resistant Carbon Steel Flat Products and Certain Cut-to-Length Carbon Steel Plate From Germany*, 58 Fed. Reg. 44,170, 44,170 (Aug. 19, 1993), *with Final Determinations of Sales at Less Than Fair Value: Certain Hot-Rolled Carbon Steel Flat Products, Certain Cold-Rolled Carbon Steel Flat Products, Certain Corrosion-Resistant Carbon Steel Flat Products and Certain Cut-to-Length Carbon Steel Plate*

In *Wirth's Final Scope Ruling*, Commerce concluded "CST's production process for the subject profile slab (initial rolling, followed by hot scarfing, followed by final rolling) must effectively further work CST's product . . . [t]herefore, the resulting product is not 'semi-finished' but a hot-rolled carbon steel product." *Wirth's Final Scope Ruling* at 13. This Court sustained Commerce's decision in *Wirth Ltd. v. United States. See* 5 F. Supp. 2d at 979. Plaintiff argues Commerce's determination in *Wirth's Final Scope Ruling*, and this Court's decision in *Wirth* sustaining Commerce's final scope ruling, are controlling in this case. Plaintiff goes so far as to argue "the CIT opinion in *Wirth Limited* must properly be relied on as precedent." (Pl.'s Rep. Br. at 11.) Plaintiff contends only those production processes outlined in *Wirth's Final Scope Ruling* and *Wirth* can constitute "further working." (Pl.'s Br. at 25.) Commerce is not required to look to the processes of *Wirth* in order to find substantial evidence of ambiguity as to whether Reiner Brach's profile slab is included within the scope of the *Plate Orders*. The Court cannot identify, nor has Plaintiff demonstrated, where in *Wirth's Final Scope Ruling* or in this Court's decision in *Wirth,* Commerce or this Court stated only those production processes identified therein would constitute "further working." The Court will not limit the scope of the orders on cut-to-length carbon steel plate by providing for a finite set of production processes that may be used to manufacture plate, despite Plaintiff's attempts to have the Court adopt such a limitation.

Commerce, similarly, is not limited to the sequence of events that Plaintiff lists from the treatise, The Making, Shaping, and Treating of Steel. (Id. at 23.) The treatise indicates the "traditional sequence of events in plate (*i.e.* flat-rolled) production is: (1) rolling ingot into slab;

---

*From Brazil*, 58 Fed. Reg. 37,091, 37,092 (1993). Both define the investigations' scope by reference to Appendix I to the *Final Determination of Sales at Less Than Fair Value: Certain Cold-Rolled Carbon Steel Flat Products from Argentina*, 58 Fed. Reg. 37,062, 37,064 (1993).

(2) cooling the slab; (3) removing defects from slab by an operation known as conditioning, *i.e.* hot scarfing; and (4) converting slab into plate by reheating and further hot working by rolling." (Pl.'s Br. at 23, *quoting* The Making, Shaping, and Treating of Steel, 701-702); *See also Preliminary Scope Determination* at 6. Plaintiff maintains none of the processes that constitute step number three, "conditioning," are ever performed on Reiner Brach profile slab, and, therefore, it may not be considered "further worked." (Pl.'s Br. at 23.)

Commerce specifically noted "[t]he reference (The Making, Shaping, and Treating of Steel) recognizes, however, that 'there are some important variations from this sequence of events . . . [I]t is possible, and often quite economical, to roll ingots directly, through the bloom, slab, or billet stage into more refined and even finished steel products . . . . [T]his process involves one continuous operation which may frequently be done without reheating.'" *Preliminary Scope Determination* at 6, *quoting* The Making, Shaping, and Treating of Steel, 702 (10th ed. 1985).) Plaintiff rebuts this by arguing "[t]his conclusion is patently absurd on this record. All that might be said is it's possible to roll ingot into a 'more refined' product (e.g. slab, re-roll slab, slab profiles) and finished steel products. It is incontrovertible, on this record, that the subject articles may not be considered 'finished'." (Pl.'s Rep. Br. at 11-12.)

The Court rejects Plaintiff's argument. The Making, Shaping, and Treating of Steel is a recognized treatise in the industry. It clearly indicates there is more than one method by which to create a "flat-rolled" plate product. Commerce also explicitly stated "the language of the scope leaves ample room for a wide variety of finishing/flattening processes; there is simply no requirement that merchandise be, for example, hot scarfed, to be included in the scope." *Final Scope Determination* at 7. The Court finds the evidence cited by Defendants indicates Reiner

Brach profile slab may be "further worked" into a finished, "flat-rolled product" in accordance with one of the production processes listed.  At the very least the evidence precludes an outright finding that Reiner Brach profile slab receives only primary hot-rolling and is a semifinished product.

This Court finds the record contains substantial evidence supporting Commerce's conclusion that the petitions, initial investigations, and determinations of Commerce and the ITC are ambiguous as to whether Reiner Brach's profile slab is included within the scope of the *Plate Orders*.  When the order does not clearly include or exclude the product at issue or the consulted sources are conflicting, then guidance as to the intended scope of the order may be sought by application of the *Diversified Products* criteria.  *See Smith Corona Corp. v. United States*, 915 F.2d 683, 686 (Fed. Cir. 1990); *Wirth Ltd. v. United States*, 5 F. Supp. 2d 968, 975-78 (Ct. Int'l Trade 1998)*; Koyo Seiko Co., Ltd. v. United States*, 834 F. Supp. 1401, 1404 (Ct. Int'l Trade 1993), *aff'd*, 31 F.3d 1177 (Fed. Cir. 1994).  Accordingly, the Court holds Commerce properly resorted to application of the *Diversified Products* criteria in determining whether Reiner Brach profile slab is merchandise of the same class or kind as cut-to-length carbon steel plate.

*B.  Whether Commerce's Diversified Products Analysis is Supported by Substantial Evidence*

The applicable regulation provides that when the petition, initial investigations, and determinations of Commerce (including prior scope determinations) and the ITC do not resolve definitively whether the product in question is within the scope of an antidumping or countervailing duty order, Commerce shall continue its analysis by applying the *Diversified Products* criteria.  These criteria include "(i) [t]he physical characteristics of the product; (ii)

[t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he channels of trade in which the product is sold; and (v) [t]he manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2) (1998). The purpose of an analysis under section 351.225(k)(2) is to "determine whether a product is sufficiently similar as merchandise unambiguously within the scope of an order as to conclude the two are merchandise of the same class or kind." *Wirth*, 5 F. Supp. 2d at 981; *see also Eckstrom Indus., Inc. v. United States*, 70 F. Supp. 2d 1360, 1364 (Ct. Int'l Trade 1999). In conducting this analysis, "it is well settled that Commerce has discretion in how to balance the *Diversified Products* criteria." *Koyo Seiko Co., Ltd. v. United States*, 955 F. Supp. 1532, 1547 (Ct. Int'l Trade 1997); *Smith Corona Corp. v. United States*, 698 F. Supp. 240, 253 (Ct. Int'l Trade 1988).

Plaintiff asserts Commerce's *Diversified Products* analysis is not supported by substantial evidence on the record. Defendant and Defendant-Intervenors contend the Court should reject Plaintiff's assertions and find Commerce's conclusions, based on its application of the *Diversified Products* criteria, to be supported by substantial evidence on the record.

1. Physical Characteristics

In its *Final Scope Determination* the Department of Commerce concluded the physical characteristics of Reiner Brach profile slab are substantially similar to those of heavy plate. *Final Scope Determination* at 3. Commerce discusses six factors supporting this conclusion. First, Commerce notes Reiner Brach profile slab shares common dimensional characteristics with the subject merchandise. *Id.* at 7. Second, Commerce notes Reiner Brach profile slab shares common chemical characteristics with the subject merchandise. *Id.* Third, Commerce explains

Reiner Brach guarantees "[f]latness within close tolerances" and "according to international standards, with excellent surface." *Id*. at 7-8. Reiner Brach's Sales Brochure also states that thickness and width tolerances are according to requirement. *Id.* Fourth, Commerce notes that Reiner Brach profile slab meets thickness and flatness tolerances typical of plate. A survey provided by Plaintiff demonstrates that eight out of ten tested profile slabs did meet ASTM A6 tolerances, a specification for carbon steel plate. *Id*. at 7. Fifth, Commerce stated that "Novosteel's claim that the Reiner Brach profile slabs are not dimensionally uniform is irrelevant to the present analysis, as dimensional uniformity is not a requirement for classification as plate." *Preliminary Scope Determination* at 7, *aff'd, Final Scope Determination* at 7. Finally, Commerce explained that record evidence indicated Reiner Brach's profile slabs are finished, rather than semi-finished, products because: (1) Plaintiff noted in its questionnaire response that Reiner Brach profile slabs may be rolled from slab itself; (2) Reiner Brach Sales Brochure states that "ultrasonic testing is performed manually on each finished slab to provide our customers with internal integrity assurance" and "[a]ll pieces are cut back to sound, clean steel," demonstrating Reiner Brach performs a variety of quality- and finish-enhancing operations that suggest its profile slabs are sold as finished products; and (3) the Reiner Brach Sales Brochure indicates that "a hydraulic press as well as a five-roll flattening machine are employed." *Preliminary Scope Determination* at 6, *aff'd, Final Scope Determination* at 7.

Plaintiff challenges the *Final Scope Determination's* conclusions, contending Reiner Brach profile slab is not a finished product because it does not share the same physical characteristics as carbon steel plate. First, Plaintiff reiterates its argument that Reiner Brach profile slab is not a finished, flat-rolled product because it has not been "further worked" in

accordance with any of the production processes outlined by *Wirth's Final Scope Ruling* or *Wirth*. The Court need not engage in an extended analysis to reject Plaintiff's argument with respect to this issue. The Court made it clear, *supra* DISCUSSION at Section A, that it would not limit the scope of the *Plate Orders* by creating a finite set of production processes capable of manufacturing flat-rolled plate products.

Second, Plaintiff contends "Reiner Brach's mention of a flattening machine in their flyer is not evidence that a flattening machine was utilized in the production of Reiner Brach slab." (Pl.'s Br. at 26.) Plaintiff claims blueprints of the Reiner Brach facility do not incorporate a five-roll flattening machine. (Id.; *Facility Blueprints*, *reproduced* at Pl.'s App. Tab 3, Ex. 6.) Plaintiff asserts Commerce's conclusion that Reiner Brach actually uses a flattening machine in the production of the subject merchandise is "'unsubstantiated and contradicted', not supported by any evidence and not in accordance with law." (Pl.'s Br. at 26.) The Court has already declined to re-weigh the record evidence and found that the Sales Brochure is relevant evidence that Commerce is entitled to rely upon. *See supra*, DISCUSSION at Section A.

Third, Plaintiff argues Commerce erred in relying on Reiner Brach's use of ultrasonic testing of the profile slab as evidence of a conditioning or finish-enhancing process that would result in the creation of a finished product. (Id. at 27.) Plaintiff maintains ultrasonic testing neither enhances the physical characteristics nor the performance of the profile slab. Rather, Plaintiff urges, the testing merely identifies large air pockets which are detrimental to the internal integrity of the slab. (Id.) As Commerce stated in its *Final Scope Determination*, it did not "cite Reiner Brach's use of ultrasonic testing to prove that Reiner Brach is producing plate rather than slab." Commerce's reference to the testing was to "demonstrate that the company performs a

variety of quality-and finish-enhancing operations that suggest its profile slabs are sold as finished products." *Final Scope Determination* at 7. The Court finds Commerce was justified in using the ultrasonic testing as further evidence that Reiner Brach's profile slabs share similar physical characteristics with plate.

The Court finds Commerce's determination that Reiner Brach profile slab and merchandise unambiguously within the scope of the Plate Orders share similar physical characteristics is supported by substantial evidence on the record and is otherwise in accordance with law.

2. Ultimate Use

Commerce's *Final Scope Determination* also concluded Reiner Brach profile slab has ultimate uses similar to merchandise unambiguously within the scope of the *Plate Orders*. Commerce found "that some of the end uses for Reiner Brach profile slabs overlap with uses for other products covered by the scope of the AD and CVD orders." *Final Scope Determination* at 8. Commerce observed that "while products may have a physical characteristic which distinguishes them from other cold-rolled and hot-rolled flat products, this difference does not necessarily rise to a level of a class or kind distinction." *Preliminary Scope Determination* at 7. Commerce cited three factors leading to this conclusion. First, two common plate specifications - A6 and A36 - do not require mechanical certification. Reiner Brach profile slab fits within these two categories. *Final Scope Determination* at 8. Second, Commerce found that "Novosteel appears to concede that, with respect to certain 'primitive' applications, profile slab could substitute for plate." *Id.* Third, Commerce found it relevant that the Reiner Brach Sales

Brochure states the company was founded "to augment the shrinking supply of very expensive thick plate on the world steel market." *Id.*

Plaintiff contends Commerce's analysis is "inherently flawed" because Commerce never provides evidence to support its "claim that slab is ever substitutable for plate in mechanical and structural applications." (Pl.'s Br. at 29.) Plaintiff argues "there is a distinct class of application for which slab is not suitable for use, namely engineering uses, bridges, etc." (Id.) Plaintiff also argues that Commerce failed to consider the affidavits of Novosteel's U.S. end-users that indicate slab cannot be used in any type of structural application, nor is it purchased for use in such applications. (Id.) Third, Plaintiff asserts it has never conceded that profile slab could substitute for plate. (Id. at 30.) Fourth, Plaintiff contends that, in *Wirth*, the Court held that "steel plate and slab are not interchangeable." (Id.) Finally, Plaintiff contends "Barzelex's U.S. customers buy Reiner Brach slab with the expectation of use in primitive applications." (Id. at 31.)

The Court rejects Plaintiff's arguments. Commerce clearly stated in its *Final Scope Determination* that it "did not find that Reiner Brach profile slab may be substituted for plate in mechanical and structural applications; rather, [it] found simply that 'several of the ultimate uses {for profile slabs} are the same as those for other products within the scope of the . . . orders.'" *Final Scope Determination* at 8. As Commerce indicated, Reiner Brach profile slab does have the potential for substitution in A6 and A36 applications, those that do not require mechanical certification. *See id.* at 8; *Lukens 1996 Plate Steel Specification Guide*, *reproduced* at Pl.'s App. Tab 6, Ex. 3, at 28. Plaintiff's argument with respect to the Court's holding in *Wirth* that steel plate and slab are not interchangeable is inaccurate. The Court held that the two products need not be an identical replacement for one another to have similar ultimate uses. *See Wirth*, 5 F.

Supp. 2d at 980.  The ultimate use criterion does not require a complete overlap of uses to be supported by substantial evidence.  Plaintiff urges this Court to accept declarations by U.S. customers that they "do not recommend that end users substitute Reiner Brach slab for plate applications."  (Pl.'s Br. at 31.)  As Defendant aptly notes, the issue is whether Reiner Brach's profile slabs could substitute for cut-to-length carbon steel plate in certain applications.  (Def.'s Br. at 35.)  There is no requirement that Commerce find actual substitutability for all applications.

Additionally, Plaintiff has in fact conceded that profile slab could substitute for plate in "primitive applications where mechanical guarantees are not necessary."  *Novosteel Questionnaire Response*, *reproduced* at Pl.'s App. Tab 9, at 5 (Reiner Brach profile slab "is limited to primitive applications."); *Id.* at 19 ("Carbon steel plate may theoretically be substituted for Reiner Brach slab profile . . . .").  Reiner Brach profile slab has been used in making platens, counterweights, molds, and machinery components after having been cut into shape by an oxy-acetylene torch.  *See Novosteel Scope Inquiry*, *reproduced* at Pl.'s App. Tab 1, at 24.  These are all typical applications for heavy plate.  Finally, Plaintiff's argument that it never told its U.S. customers that Reiner Brach profile slab may be used in place of plate is directly contradicted by the Reiner Brach Sales Brochure.  The Sales Brochure plainly states Reiner Brach profile slab was produced to "augment the shrinking supply of very expensive thick plate on the world steel market."  *Reiner Brach Sales Brochure*, *reproduced* at Pl.'s App. Tab 4, Att. B, at 1.  Plaintiff also concedes it handed the Sales Brochure out to its U.S. customers.  *See Novosteel Questionnaire Response*, *reproduced* at Pl.'s App. Tab 9, at 27.  The Court finds Commerce's determination that some of the end uses for Reiner Brach profile slabs overlap with uses for other

products covered by the scope of the *Plate Orders* is supported by substantial evidence on the record and is otherwise in accordance with law.

3. Expectations of the Ultimate Purchasers

Commerce concluded that the expectations of the ultimate purchasers of Reiner Brach profile slab are similar to those of the ultimate purchasers of cut-to-length carbon steel plate. *Final Scope Determination* at 9. Commerce cited three factors as the basis for this determination. First, the physical characteristics of both products are similar. *Id.* Second, many of the ultimate uses of the two products are the same. *Preliminary Scope Determination* at 8, *aff'd, Final Scope Determination* at 9. Third, Reiner Brach's Sales Brochure "strongly suggests that uses, and therefore customer expectations, are similar for profile slabs and thick plate." *Preliminary Scope Determination* at 8, *aff'd, Final Scope Determination* at 9. (Citing Reiner Brach's assurances of "superior internal integrity . . . flatness within close tolerances . . . thickness and width tolerance according to requirements . . . {and} suppl{ied} to chemistry."). Commerce also rebutted Plaintiff's assertion that because certain U.S. customers only made one trial purchase of Reiner Brach profile slab or declined a trial purchase altogether, their expectations are not comparable. Commerce concluded the "very fact that some of these customers (who, according to Novosteel, only stock hot-rolled plate) made trial purchases could be viewed as an indication that they do view profile slabs as an alternative to thick plate." *Final Scope Determination* at 9.

Plaintiff contends Commerce has not offered any evidence that the expectations of slab purchasers are the same as those of a purchaser of plate. First, Plaintiff asserts that the physical

characteristics and ultimate uses of Reiner Brach profile slab are not the same as those of

finished plate products.  (Pl.'s Br. at 33.)  Second, Plaintiff maintains the Reiner Brach Sales

Brochure is not credible evidence upon which Commerce may rely.  (Id. at 31-32.)  Third,

Plaintiff argues Commerce has offered no evidence supporting its conclusion that "'the fact that

some U.S. companies made trial purchases of slab could be viewed as an indication that they

view profile slabs as an alternative to thick plate.'"  (Pl.'s Br. at 32, *quoting Final Scope*

*Determination* at 9.)  Plaintiff asserts the U.S. companies' failure to stock Reiner Brach profile

slab after solicitation is compelling evidence that these companies do not view profile slab as an

alternative to thick plate.  (Pl.'s Br. at 32.)

The Court finds Plaintiff's arguments unpersuasive.  Since the Court has already

determined that there is substantial evidence supporting Commerce's conclusions that the

physical characteristics and ultimate uses for Reiner Brach profile slab are similar to carbon steel

plate, Plaintiff's first argument is without merit.  *See supra*, DISCUSSION at Section B, parts 1& 2

(Physical Characteristics and Ultimate Use).  Similarly, the Court rejects Plaintiff's claim that the

Reiner Brach Sales Brochure is not credible evidence upon which Commerce may rely for the

reasons stated *supra*, DISCUSSION at Section A.  Finally, the Court will not accept Plaintiff's

invitation to re-weigh the evidence regarding the interpretation of the U.S. companies' failure to

become customers of Reiner Brach profile slab.  Commerce is entitled to accord that weight it

feels is due the evidence.  *See Wirth*, 5 F. Supp. 2d at 979-80; *Shieldalloy Metallurgical Corp. v.*

*United States*, 975 F. Supp. 361, 364 (Ct. Int'l Trade 1997).  The Court finds that Commerce's

determination that the expectations of ultimate purchasers of Reiner Brach profile slab are

similar to those of the ultimate purchasers of cut-to-length carbon steel plate covered by the *Plate*

*Orders* is supported by substantial evidence on the record and is otherwise in accordance with law.

4. <u>Channels of Trade</u>

The Department of Commerce concluded in its *Final Scope Determination* that there is an overlap in the channels of trade for Reiner Brach profile slab and the cut-to-length carbon steel plate subject to the *Plate Orders*. *Final Scope Determination* at 9. Commerce based this determination on three factors. First, Commerce found Plaintiff sells both plate and profile slab. *Id*. Second, Plaintiff submitted evidence indicating it attempted to sell profile slabs to some of its existing customers for cut-to-length plate. *Id*. Third, the Reiner Brach Sales Brochure states its "profile slabs are intended for the thick plate market." *Id*.

Plaintiff contends "any determination of the [Department of Commerce] that the channels of trade are the same for Reiner Brach profile slab and hot-rolled plate are based upon false assumptions by the [Department of Commerce] and must be overturned." (Pl.'s Br. at 35.) Plaintiff insists, contrary to Commerce's findings, that it does not buy hot-rolled plate from any German producer. Plaintiff also maintains it has never offered or sold hot-rolled plate in the United States. (Id. at 34.) Finally, Plaintiff asserts the customers it solicited for prospective purchases of profile slab were not existing customers of cut-to-length plate, because it had never before offered or sold hot-rolled plate in the United States. (Id.)

The Court again finds Plaintiff's arguments unpersuasive. Commerce's conclusion that Plaintiff sells both slab and plate is based upon record evidence supplied by the parties during the scope proceeding. Defendant-Intervenors submitted a document indicating that on November 9,

1995, Novo-Plez S.A. changed its name to Novosteel S.A.  *See* Pl.'s App. Tab 4, Att. C.

Defendant-Intervenors also submitted an excerpt from Steel Traders of the World stating that

Novo-Plez S.A. dealt with the following steel products:

> re-rolling ingots, *slabs*, blooms, billets, hot rolled band (for re-rolling), wire rod,
> merchant bars, reinforcing bars . . . *medium plates, heavy plates*, hot rolled uncoated
> sheet/coil . . . .

Steel Traders of the World 286, *reproduced* at Pl.'s App. Tab 4, Att. C (emphasis added).[9]

Plaintiff did not challenge Defendant-Intervenors' reliance upon this information, and in fact

confirmed Defendant-Intervenors' assertions in its October 26, 1998 submission in which

Plaintiff states its "activities are identified in detail at page 319,  Steel Traders of the World, 7th

ed. 1997."  *Novosteel's Scope Inquiry Supplemental Information*, *reproduced* at Pl.'s App. Tab 3,

at 22.  The referenced page confirms Novosteel handles the same steel products as its

predecessor, Novo-Plez, S.A.  *See* Steel Traders of the World 319 (7th ed. 1997), *reproduced* at

Def.'s App. Tab 3.  Furthermore, Plaintiff admitted "that following publication of the Reiner

Brach flyer in 1994," its exclusive importer, "Barzelex, Inc., solicited U.S. buyers and processors

of hot rolled plate as potential customers of their slab products."  *Novosteel's Rebuttal to Dewey*

*Ballantine's October 26, 1998 Comments*, *reproduced* at Pl.'s App. Tab 6, at 9.  Finally, the

Court notes the Reiner Brach Sales Brochure does indicate that Reiner Brach profile slab is

intended to "augment the shrinking supply of very expensive thick plate on the world market."

*Reiner Brach Sales Brochure*, *reproduced* at Pl.'s App. Tab 4, Att. B, at 1.  The Court finds

Commerce's determination that Reiner Brach profile slab and merchandise within the scope of

---

[9] The Court notes the edition and year for this publication are not marked on the excerpt provided by Plaintiff.

the *Plate Orders* are sold within the same channels of trade is supported by substantial evidence on the record and is otherwise in accordance with law.

### 5.   Manner of Advertising and Display

Commerce concluded "that the manner in which the Reiner Brach profile slabs are principally advertised (the Reiner Brach sales brochure) is consistent with the manner in which the cut-to-length plate covered by these orders is also advertised." *Preliminary Scope Determination* at 9, *aff'd*, *Final Scope Determination* at 10.  Commerce based its determination on the Reiner Brach Sales Brochure which explicitly states that "Reiner Brach . . . was established more than 25 years ago by Mr. Reiner Brach who foresaw the need for reasonable cost high quality hot rolled profiling slabs to augment the shrinking supply of very expensive thick plate on the world steel market." *Preliminary Scope Determination* at 9.  Commerce concluded this "is strongly indicative that [Reiner Brach's] profile slabs are advertised and displayed in the same manner as cut-to-length carbon steel plate that is subject to the orders." *Final Scope Determination* at 10.   Furthermore, Commerce explained that Plaintiff's assertions rested upon the "false notion that plate and slab are mutually exclusive product categories." *Id*. Given the overlap between the two products, Commerce explained "it is certainly not illogical for Reiner Brach to sell profile slabs to customers who, for example, do not require plate certified for mechanical or structural applications." *Id*.

Plaintiff raises two arguments in rebuttal of Commerce's determination.  First, Plaintiff asserts "[n]either Reiner Brach, Novosteel, nor Barzelex advertise or promote the Reiner Brach product."  Specifically, "[i]nformation about the Reiner Brach product is never distributed by

advertisement or solicitation," and it is "never 'displayed', no trade shows or fairs have ever been

visited or used in the North American Market." (Pl.'s Br. at 35.) Second, Plaintiff argues the

Reiner Brach Sales Brochure cannot be compared with the detailed catalogues used by plate

producers to advertise their products. For example, Plaintiff claims "Petitioner, Bethlehem Steel,

advertises their product in a 90-page catalogue." Plaintiff also notes the descriptions in those

catalogues are much more detailed, containing "in-depth chemical composition listings, as well

as treatments requirements, delivery requirements, thickness and strength specifications,

dimensions and composite price tables." (Id. at 35-36.)

The Court rejects Plaintiff's arguments. First, Plaintiff's own submissions indicate that it

test-marketed Reiner Brach profile slab and used the Sales Brochure in the United States. *See*

*Novosteel Questionnaire Response*, *reproduced* at Pl.'s App. Tab 9, at 15, 20, 28. Second, the

steel companies Plaintiff refers to are large steel companies that produce a wide variety of plate

products used for a wide variety of purposes, whereas Reiner Brach is admittedly a fairly small

company manufacturing a limited number of products. Therefore, it would naturally follow that

the larger companies would require larger and more detailed catalogues to highlight the

differences between their products. The Court finds Commerce's determination that the manner

in which Reiner Brach profile slab is advertised and displayed is similar to that of cut-to-length

carbon steel plate is supported by substantial evidence and is otherwise in accordance with law.

CONCLUSION

For the reasons stated above, the Court finds Commerce's *Final Scope Determination* is

supported by substantial evidence on the record and is otherwise in accordance with law.

Plaintiff's motion for judgment upon the agency record is denied.

_____
Gregory W. Carman,
Chief Judge


Dated: January 18, 2001
      New York, New York