**Slip Op. 02-126**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____
                               :

MARK YUAN-SHENG CHANG      :
                                 :

       Plaintiff,           :
                                 :

       v.                 :         Court No. 02-00261
                                 :

THE UNITED STATES SECRETARY  :
OF THE TREASURY,           :
                                 :

       Defendant.        :
_____:

[Denial of customs broker's license sustained.]

Dated:  October 24, 2002

     Mark Yuan-Sheng Chang, pro se.

     Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (John J. Mahon and Arthur J. Gribbin), for defendant.

**OPINION**

     **RESTANI, Judge:**  This matter is before the court on defendant's motion for judgment upon the administrative record pursuant to USCIT Rule 56.1(a).  Plaintiff Mark Yuan-Sheng Chang challenges the decision of the Deputy Assistant Secretary of the Department of Treasury ("Treasury") affirming the United States Customs Service's ("Customs") denial of his application for a customs broker's license.[1]

_____

    [1]  The Secretary of the Treasury is authorized to decide appeals of a customs broker's license denial by Customs.  The Secretary of the Treasury ("Secretary") has delegated this authority to the Deputy Assistant Secretary.  See Rudloff v. United States, 19 CIT 1245, 1246 n.2 (1995), aff'd, 108 F.3d 1392 (Fed. Cir. 1997).

## JURISDICTION AND STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1581(g)(1) (2000), the court has exclusive jurisdiction to review the denial of a customs broker's license. See O'Quinn v. United States, 100 F. Supp. 2d 1136, 1137 (Ct. Int'l Trade 2000). Findings of fact by the Secretary of the Treasury supporting a customs broker's license denial are conclusive unless they are not supported by substantial evidence. 19 U.S.C. § 1641(e)(3) (2000); see also Bell v. United States, 17 CIT 1220, 1223-25, 839 F. Supp. 874, 877-79 (1993).[2] The decision of the Assistant Secretary to deny a broker's license based upon those facts will be upheld unless arbitrary and capricious. See O'Quinn, 100 F. Supp. 2d at 1138 (reviewing a Treasury decision to deny a broker's license under the arbitrary and capricious standard as provided in the Administrative Procedures Act).

## BACKGROUND

Plaintiff Mark Yuang-Sheng Chang applied for a customs broker's license ("license") on March 1, 2000. In order to obtain a license, an applicant must, among other things, pass both a written examination and background investigation. See 19 C.F.R. § 111.13 (examination); 19 C.F.R. § 111.14(d) (investigation). On April 3, 2000, Mr. Chang sat for and passed the written broker's examination. Customs then proceeded to investigate Mr. Chang's qualifications, integrity, character, and reputation as required by 19 C.F.R. § 111.14(d). In the course of its investigation, Customs determined that Mr. Chang had been involved in the mis-classification of goods in order to obtain a lower rate of duty. The discovery came about as a result of an

---

[2] The statute provides that under certain conditions additional evidence may be received by the court for further fact finding by the Secretary. See 19 U.S.C. § 1641(e)(4). This provision is not applicable here.

unrelated investigation of two shoe importing companies.

Mr. Chang was employed as an entry writer at United Customhouse Brokers, Inc. ("UCB"), a Customs Broker. UCB was the designated broker for Peter's Shoes, an importer of athletic shoes. Customs investigated the mis-classification of a certain style of athletic shoe previously imported by Peter's Shoes. Customs determined that Peter's Shoes had mis-classified a particular style of shoe, along with several others, as made of leather when they were actually made of plastic in order to obtain a lower duty rate.[3] Mr. Chang prepared the entries on behalf of Peter's Shoes. As a result of the mis-classification, Customs issued a Custom Form 29 ("CF29") notifying Peter's Shoes of the proper classification and requesting that Peter's Shoes submit the correct duty owed.

Shortly thereafter, the owner of Peter's Shoes, Peter Zanag, and his wife formed a new importing company, Jenny Footwear,[4] to import those shoes that were the subject of the CF29's issued to Peter's Shoes.[5] The entries filed by Jenny Footwear on these shoes continued to classify the shoes as made of leather and to claim the lower duty rate of 8.5%. UCB was again the designated broker for Jenny Footwear and the entries were prepared by Mr. Chang.[6]

---

[3] At the time of the investigation, leather shoes carried a duty rate of 8.5% whereas plastic shoes carried a duty rate of 48% or 90 cents per pair plus 37.5% depending on the value of the shoe.

[4] The mailing address for Jenny Footwear was listed as Zanag's home address.

[5] Customs determined that the shoes were from the same supplier, and the merchandise, invoice and price were identical to those previously imported by Peter's Shoes. The only difference, according to Customs, was that the style number listed on the invoice had been changed from "918" to "951." Neither shoe was actually labeled with a style number.

[6] Mr. Chang no longer works for UCB.

At a May 9, 2000 meeting held to investigate the entries, Mr. Chang was asked by a Customs Import Specialist Team Leader, Rene LaRue, why, after receiving the CF29's for Peter's Shoes, he had continued to mis-classify the same merchandise. Mr. Chang responded that Zanag had told him that the shoes were leather. In addition, Mr. Chang commented that he was sympathetic towards Zanag because he had recently been robbed and was generally having a difficult time. Mr. Chang acknowledged that he was aware that Jenny Footwear and Peter's Shoes were related companies. Mr. Chang stated that he regretted disregarding the CF29's. On August 11, 2000, the Customs agent assigned to Mr. Chang's background check for the license again asked why he had disregarded the CF29's. Mr. Chang altered his response somewhat and stated that he did not fully understand some of the classification descriptions.

On September 11, 2000, Customs issued "Report of Investigation No. LA10CH00LA0041." Based on the findings in the report, the Assistant Port Director for U.S. Customs Service Trade Operations recommended that Mr. Chang's application be denied in accordance with 19 C.F.R. §§ 111.16(b)(1), (3) and (6),[7] for aiding and abetting an importer in

---

[7] § 111.16 provides, in relevant part:

(b) Grounds for denial. The grounds sufficient to justify denial of an application for a license include, but need not be limited to:

> (1) Any cause which would justify suspension or revocation of the license of a broker under the provisions of § 111.53;
> . . .
> (3) A failure to establish the business integrity and good character of the applicant;
> . . .
> (6) A reputation imputing to the applicant criminal, dishonest, or unethical conduct, or a record of that conduct.

the evasion of Customs duties, and assisting the importer in changing his identity to achieve this evasion. On January 19, 2001, the Assistant Commissioner, U.S. Customs Service, Office of Field Operations, notified Mr. Chang by letter that his application for a customs broker's license had been denied.

Pursuant to 19 C.F.R. § 111.17(a), Mr. Chang appealed the denial of his application by letter dated February 20, 2001. Mr. Chang argued that he had never dealt with a CF29 before, that he had relied on information provided by Peter's Shoes, and that his conduct was not intentional. Mr. Chang later presented an oral appeal by telephone to the Customs Service's Broker Licensing Review Board. Mr. Chang's appeal was denied.

Pursuant to 19 C.F.R. § 111.17(b), Mr. Chang appealed Custom's denial of his application by letter to the U.S. Department of the Treasury. A Treasury memorandum reviewing Chang's appeal noted, among other things, that he had failed to directly address his admission that he disregarded the CF29's. The memorandum also noted that the potential loss of revenue for these erroneous entries was at least $186,653.00 and that such conduct would be cause for suspension or revocation of a broker's license under 19 C.F.R. § 111.53. The memorandum recommended that the denial be upheld. On January 28, 2002, the Acting Deputy Assistant Secretary of the Department of Treasury, Timothy E. Skud, denied Mr. Chang's appeal by letter. This appeal followed.

As before, Mr. Chang challenges the denial of his application for a customs broker's license and, presumably, the subsequent decisions by Customs and Treasury affirming the denial. The Government argues that Customs properly denied Mr. Chang's application on the grounds specified in 19 C.F.R. §§ 111.16(b)(1), (3), and (6).

**DISCUSSION**

Pursuant to 19 U.S.C. § 1641(b) (2000), no person may act as a customs broker without a license granted by the Secretary of Treasury. Section 1641(f) provides the Secretary with the authority to "prescribe such rules and regulations relating to the customs business of customs brokers . . . including rules and regulations governing the licensing of . . . customs brokers . . . ." 19 C.F.R. § 111.16(b) sets out six specific, though not exclusive, grounds for the denial of a license application. "Customs regulations reasonably permit denial of broker's licenses to otherwise qualified persons based on, inter alia, lack of business integrity, engaging in unfair commercial practices, or having a reputation for dishonest or unethical conduct." Portal v. United States, 20 CIT 617, 618 (1996). This is consistent with the purpose of the broader statutory scheme regulating brokers as contained in 19 U.S.C. § 1641. See United States v. Federal Ins. Co., 805 F.2d 1012, 1018 (Fed. Cir. 1986) (quoting S. Rep. No. 1170, 74th Cong., 1st Sess. 3 (1935)) ("[T]he corrupt practices of a few [brokers], unhampered by adequate statutory provisions for supervision, have proved a grave menace to importers and customs revenues alike. The present amendments are designed to remedy this situation."). "The entire Customs entry system depends on brokers' honesty." Portal, 20 CIT at 618.

After reviewing the evidence, the Secretary concluded that Mr. Chang actively participated in the mis-classification of merchandise. The Secretary denied Mr. Chang's application on grounds that his conduct indicated a lack of business integrity and good character, and was dishonest and unethical. Mr. Chang argues that he acted on information provided by the importer and did not fully understand the meaning of the CF29's and, therefore, did not intentionally mis-classify the shoes. Mr. Chang does not, however, dispute that he prepared the

entries or that he was aware that the two shoe companies were related. Mr. Chang was, at minimum, on notice that the entries of similar shoes of the same material imported by essentially the same company should be classified consistently. Mr. Chang's repeated mis-classification in the face of that notice raises serious questions. Furthermore, Mr. Chang provided investigators incomplete and inconsistent explanations of the mis-classification.

"Under the applicable substantial evidence standard of review, the agency rather than the reviewing court weighs the evidence and determines its credibility." Novosteel SA v. United States, 128 F. Supp. 2d 720, 730 (Ct. Int'l Trade 2001) (discussing the substantial evidence standard in the context of a challenge to the scope of antidumping and countervailing duty orders); see also Timken Co. v. United States, 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), aff'd, 894 F.2d 385 (Fed. Cir. 1990) ("It is not within the court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record."). While it is possible that Mr. Chang did not intentionally mis-classify the shoes, the court finds that the evidence presented substantially supports the conclusion that Mr. Chang was actively involved in the mis-classification of merchandise to obtain a lower duty rate. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). As a result, the court finds that the agency's determination that Chang actively participated in the mis-classification of goods was supported by substantial evidence. The court further finds that the agency decision to deny Chang a broker license because of that mis-classification was not arbitrary and capricious and, therefore, is sustained.

## CONCLUSION

For the foregoing reasons, the court finds that the decision of the Deputy Assistant Secretary of the Treasury to deny Mr. Chang's application was based upon substantial evidence and that sufficient grounds for denial of the customs broker's license existed under 19 C.F.R. § 111.16(b).  Defendant's motion for summary judgment is granted.


_____
Jane A. Restani
JUDGE

Dated:  New York, New York

This 24th day of October, 2002.